UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE: INDYMAC MORTGAGE-BACKED            Master Docket
SECURITIES LITIGATION                     No. 09 Civ. 4583 (LAK)

This document relates to:          *All Actions*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

Denis F. Sheils                          Nicole Lavallee
Joseph C. Kohn                           Joseph J. Tabacco, Jr.
William E. Hoese                         Patrick T. Egan
KOHN, SWIFT & GRAF., P.C.                 Kristen D. Tremble
                                         Jason M. Leviton
Lawrence P. Kolker                       BERMAN DEVALERIO
Rachel S. Poplock                        *Attorneys for Lead Plaintiffs Wyoming State*
WOLF HALDENSTEIN ADLER FREEMAN &          *Treasurer and Wyoming Retirement System,*
HERZ LLP                                  *and Movant Los Angeles County Employees*
                                         *Retirement Association*

*Attorneys for Movant Police and Fire*
*Retirement System of the City of Detroit*
                                         Joy A. Kruse
                                         Richard M. Heimann
Kenneth I. Trujillo                      LIEFF CABRASER HEIMANN & BERNSTEIN,
TRUJILLO RODRIGUEZ & RICHARDS, LLC        LLP

Stewart L. Cohen                         John L. Gadow
COHEN, PLACITELLA & ROTH, P.C.            POND, GADOW & TYLER, P.A.

*Attorneys for Movant City of Philadelphia*   *Attorneys for Movant Public Employees'*
*Board of Pensions and Retirement*            *Retirement System of Mississippi*

Robin F. Zwerling                        Christopher Lometti
Jeffrey C. Zwerling                      Joel P. Laitman
Justin M. Tarshis                        Daniel B. Rehns
ZWERLING, SCHACHER & ZWERLING, LLP        Kenneth M. Rehns
*Attorneys for Movant General Retirement*   COHEN MILSTEIN SELLERS & TOLL PLLC
*System of the City of Detroit*            *Attorneys for Movant Iowa Public*
                                         *Employees' Retirement System*

Robert F. Serio
Jonathan C. Dickey
Aric H. Wu
Eric M. Creizman
Dean J. Kitchens
GIBSON, DUNN & CRUTCHER LLP
*Attorneys for Underwriter Defendants and*
*Proposed Defendants Countrywide and*
*Merrill Lynch*

William R. Stein
Scott H. Christensen
Kenneth M. Katz
HUGHES HUBBARD & REED LLP

Kathryn Norcross
Kaye E. Allison
FEDERAL DEPOSIT INSURANCE CORPORATION

*Attorneys for Defendant IndyMac MBS, Inc.*

Eric R. Levine
Eric Aschkenasy
EISEMAN LEVINE LEHRHAUPT &
KAKOYIANNIS, P.C.

Robert L. Corbin
Joel M. Athey
CORBIN, FITZGERALD & ATHEY LLP

John W. Spiegel
Kathleen M. McDowell
James C. Rutten
MUNGER, TOLLES & OLSON LLP

Robert H. Fairbank
Richard D. Gluck
Michael B. Norman
FAIRBANK & VINCENT

*Attorneys for Individual Defendants*


LEWIS A. KAPLAN, *District Judge.*

   This putative class action arises from the collapse of the United States market for

mortgage-backed securities.   The securities at issue here, known as mortgage pass through

certificates (the "Certificates"), were issued pursuant to three registration statements and related

prospectuses and prospectus supplements (the "Offering Documents") filed by IndyMac MBS, Inc.

("IndyMac MBS").  The Court assumes familiarity with its prior opinion.[1]  The matter is before the

Court on three motions to intervene and a motion for leave to amend the amended consolidated

complaint ("ACC").

---

[1]
   *In re IndyMac Mortgage-Backed Securities Litigation*, 718 F. Supp.2d 495 (S.D.N.Y. 2010)
(hereinafter "*IndyMac I*").

*Facts*

I.      *The Securities*

A Certificate is a type of mortgage-backed security that entitles its owner to a portion of the revenue stream generated by an underlying pool of residential mortgage loans.   Here, IndyMac Bank originated or acquired the individual mortgage loans that underlie the Certificates. The loans then were transferred to IndyMac MBS, which bundled them into groups, or pools.   The pools were transferred to issuing trusts, which created the Certificates.   The issuing trusts then transferred the Certificates to IndyMac MBS which, in turn, sold them to the specific underwriters for each offering.   After the Certificates were rated by rating agencies, the underwriters offered them to investors.

II.      *The Action and Motions*

On May 14, 2009, Police and Fire Retirement System of the City of Detroit ("Detroit"), which allegedly had purchased certain Certificates, brought a putative class action asserting that the Offering Documents contained misrepresentations and omissions in violation of federal securities laws.[2]  On June 29, 2009, the Wyoming State Treasurer and Wyoming Retirement System (collectively, "Wyoming") filed a similar action.[3]  As contemplated by the Private Securities Litigation Reform Act ("PSLRA"), the Court then considered various motions – including by Detroit

---

[2]

*Police and Fire Retirement System of the City of Detroit v. IndyMac MBS, Inc., et al.*, 09 Civ. 4583 (LAK).

[3]

*Wyoming State Treasurer, et ano v. Olinski, et al.*, 09 Civ. 5933 (LAK).

4

and Wyoming – for the appointment of a lead plaintiff.[4]  Wyoming moved also to consolidate the two actions.[5]  The Court named Wyoming the lead plaintiff and, without opposition by Detroit, granted the motion to consolidate.[6]  The order of consolidation gave Wyoming substantial control over the pretrial proceedings and ordered it to file a consolidated class complaint.[7]  On October 9, 2009, Wyoming filed such a complaint[8] and, on October 29, 2009, the ACC.[9]  Wyoming is the only plaintiff named on the ACC.  Neither Detroit nor anyone else objected to lead counsel's naming of Wyoming as the sole plaintiff.

Defendants then filed a number of motions to dismiss the ACC.[10]  The Court ruled on them in *IndyMac I*.  Two aspects of that decision are relevant here.  First, the Court held that Wyoming has standing to sue only with respect to offerings in which it had purchased Certificates. The Court therefore dismissed for lack of standing Wyoming's claims relating to all offerings except those in which it allegedly had purchased Certificates.[11]

Second, the Court dismissed Wyoming's claims against Bank of America ("BoA"),

---

[4]
    DI 10, 14, 17.

[5]
    DI 10.

[6]
    DI 58.

[7]
    *Id.*

[8]
    DI 127.

[9]
    DI 131 ("Cpt.").

[10]
    DI 145, DI 148, DI 152, DI 157, DI 158.

[11]
    *IndyMac I*, 718 F. Supp.2d at 500-02.

which Wyoming had sued in its alleged capacity as "successor in interest" to Countrywide Securities Corporation ("Countrywide") and Merrill, Lynch, Pierce, Fenner & Smith ("Merrill Lynch"), underwriters of several of the offerings at issue.  The Court did so on the ground that the ACC failed to allege any facts supporting a departure from the general rule that a parent corporation is not liable for its subsidiaries' acts solely by virtue of its ownership interest.[12]

The motions at issue here stem from those two holdings.  The motions to intervene aim to cure Wyoming's standing deficiency with respect to numerous offerings.  Each movant alleges that it purchased securities pursuant to one or more offerings in respect of which Wyoming lacks standing to sue.  On that basis, each seeks to intervene to assert claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 on behalf of a class, the members of which purchased Certificates in the pertinent offering.[13]

In addition, Wyoming seeks leave to amend the ACC to add Countrywide and Merrill Lynch as defendants with respect to the claims concerning offerings that they allegedly

---

[12]  *Id.* at 508.

[13]  In the first motion, the City of Philadelphia Board of Pensions and Retirement ("Philadelphia") seeks to assert claims in connection with four offerings, the Los Angeles County Employees Retirement Association ("Los Angeles") in connection with five, Detroit in connection with one, and the Public Employees' Retirement System of Mississippi ("Mississippi") in connection with six.  *See* DI 204 Exs. C, D, E, F.  In the second motion, the General Retirement System of the City of Detroit ("Detroit Retirement") seeks to assert claims in connection with two offerings.  *See* DI 220 at 2.  And in the third motion, the Iowa Public Employees' Retirement System ("Iowa") seeks to assert claims in connection with three offerings.  *See* DI 238 at 1.  There is some overlap.  Both Philadelphia and Mississippi seek to assert claims in connection with the INDA 2006-AR3 offering.  And two of the offerings as to which movants seek to assert claims – INDA 2007-AR7 (Philadelphia and Los Angeles) and INDX 2006-AR14 (Mississippi) – need not be considered as Wyoming has standing to assert the pertinent claims.  *See* Cpt. Ex. A.

6

underwrote.[14]  Several of the proposed intervenors join the motion for leave to amend, assuming of course that they are permitted to intervene.  Defendants oppose both motions, principally on timeliness grounds.[15]


*Discussion*

I.    *Motions to Intervene*

    A.    *Statute of Repose*

            As noted in *IndyMac I*, "no Section 11 claim may be brought 'more than three years after the security was bona fide offered to the public,'" and "no Section 12(a)(2) claim may be brought 'more than three years after the sale.'"[16]  Section 15 imposes vicarious liability for persons controlling violators of Sections 11 and 12.  Claims under that section therefore are subject to the statute of repose governing the primary violation.[17]  Defendants correctly point out that the statutes of repose have expired on the majority of the claims that movants seek to assert.  Movants respond that the statutes were tolled while the claims were included as part of this action, viz. between the filing of Detroit's original complaint and the Court's decision in *IndyMac I*.

---

14

        To be precise, only the Wyoming State Treasurer – and not the Wyoming Retirement System – moves for leave to amend.  For ease of reference, the Court refers to the motion to amend as having been made by Wyoming (among others).

15

        The Court considers all of the issues discussed in this decision fully briefed and ripe for disposition, as they were addressed by the parties either in their briefing or in subsequent letters to the Court.

16

        *IndyMac I*, 718 F. Supp.2d at 507 (quoting 15 U.S.C. § 77m).

17

        *See Dodds v. Cigna Securities, Inc.*, 12 F.3d 346, 349 & n.1 (2d Cir. 1993); *In re Morgan Stanley Mortg. Pass-Through Certificates Litigation*, No. 09 Civ. 2137 (LTS) (MHD), 2010 WL 3239430, at *6 (S.D.N.Y. Aug. 17, 2010).

Although some cases have reached a different result, this Court is persuaded by Judge Castel's recent ruling that neither *American Pipe* nor any other form of tolling may be invoked to avoid the three year statute of repose set forth in Section 13 of the Securities Act of 1933.[18]  The putative intervenors here cannot avoid the statute of repose on a "relation back" theory under FED. R. CIV. P. 15(c) because the statute of repose by its terms allows no exceptions.[19]  Indeed, Rule 15 may not be construed to permit relation back because such a construction would conflict with the Rules Enabling Act, which provides in pertinent part that the rules prescribed by the Supreme Court (including Rule 15) "shall not abridge, enlarge or modify any substantive right."[20]

With that conclusion in mind, the Court considers which, if any, of the claims that movants seek to assert are barred by the applicable statutes of repose.

1.  *Detroit*

The Court turns first to the position of movant Detroit.

When Detroit filed its complaint on May 14, 2009, it asserted, *inter alia*, claims in connection with the INDX 2007-AR5 offering – the only offering in which it apparently had

---

[18]
   *Footbridge Ltd. Trust v. Countrywide Financial Corp.*, __ F. Supp.2d __, 2011 WL 907121 (S.D.N.Y. Mar. 16, 2011).  *Accord In re Lehman Bros. Secur. Litig.*, ___ F.R.D. ____, 2011 WL 1453790 (S.D.N.Y. Apr. 13, 2011).

[19]
   *See* 15 U.S.C. § 77m  ("*In no event* shall any such action be brought to enforce a liability created under section 77k or 77*l*(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l*(a)(2) of this title more than three years after the sale." (emphasis added)).

[20]
   28 U.S.C. § 2072(b).

8

purchased Certificates.[21]   At that point, those claims were timely.  After the Detroit and Wyoming

actions were consolidated, Wyoming asserted claims relating to the INDX 2007-AR5 offering in the

ACC.  That offering, however, was one in which Wyoming, the only plaintiff named in the ACC,

had not purchased Certificates.  The Court therefore dismissed all claims relating to that offering

in *IndyMac I*.  Detroit now seeks to intervene as a class representative with standing to assert those

claims.

Defendants argue, *inter alia*, that at least some of the claims that Detroit seeks to

assert now are barred by the statute of repose.  The INDX 2007-AR5 offering occurred on April 2,

2007.[22]  Detroit, however, did not move to intervene until May 17, 2010 – more than three years

after the offering.  It therefore appears that at least the Section 11 and corresponding Section 15

claims that Detroit seeks to assert are time-barred.  Detroit counters, however, that its claims are

timely because it asserted them in its original May 14, 2009 complaint.  The validity of this

argument thus turns on the effect of the consolidation of the Detroit and Wyoming actions and the

post-consolidation events.

Defendants argue that the filing of the ACC superseded the Detroit complaint and

that the claims that Detroit now seeks to assert are, in effect, brand new claims that are time-barred.

Detroit contends that the claims that it asserted in its original complaint, filed before consolidation,

remain pending.  On that theory, there obviously would be no need for intervention.  More

importantly, though, the claims that Detroit asserted in its original complaint are not still pending

as part of this action.

---

[21]    DI 1.

[22]    Cpt. Ex. D at 77.

It is true, of course, that consolidation alone does not "merge [two] suits into a single cause."[23]  Even though the Court consolidated the Detroit and Wyoming actions "for all purposes,"[24] then, the two retained their separate and distinct identities.  But the analysis does not end there.

After consolidating the actions, and in accordance with the PSLRA,[25] the Court appointed "the most adequate plaintiff" – which it determined to be Wyoming – as lead plaintiff of the consolidated action.[26]  In its consolidation order, the Court directed Wyoming to file a consolidated complaint, as authorized by FED. R. CIV. P. 16(c)(2).  No party objected to the consolidation.  When Wyoming filed the consolidated complaint and, eventually, the ACC, it specified that each pleading "[r]elate[d] [t]o: ALL ACTIONS."[27]  Neither listed Detroit as a named plaintiff.  Detroit did not move to intervene or object to either filing.  Consequently, each pleading – first the consolidated complaint and then the ACC – became the operative complaint in the Detroit action as well as the Wyoming action, even though the two actions technically retained their distinct identities.  The Court's dismissal of the INDX 2007-AR5 claims in *IndyMac I* (a decision that, like the two consolidated complaints, related to all actions) therefore dismissed those claims from both

---

[23]

       *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933) (citations omitted).  *See also Cole v. Schenley Indus., Inc.*, 563 F.2d 35, 38 (2d Cir. 1977); *Zdanok v. Glidden Co., Durkee Famous Foods Division*, 327 F.2d 944, 950 n.6 (2d Cir. 1964); *Greenberg v. Giannini*, 140 F.2d 550, 551 (2d Cir. 1944); *Int'l Paving Sys., Inc. v. Van-Tulco, Inc.*, 806 F. Supp. 17, 22 (E.D.N.Y. 1992); 8 MOORE'S FEDERAL PRACTICE § 42.13[2] (3d ed. 2010).

[24]

       DI 58.

[25]

       15 U.S.C. § 78u-4.

[26]

       DI 58 ¶ 10.

[27]

       DI 127 at 1; DI 131 at 1.

actions.

When Wyoming, following the consolidation of the two actions, filed the consolidated complaints naming only itself as a plaintiff, the effect of its doing so was to drop Detroit as a plaintiff in both actions, a fact obvious to Detroit on the face of those pleadings.  To be sure, the consolidated Wyoming complaints asserted claims with respect to the INDX 2007-AR5 offering.  But those pleadings did not allege that Wyoming – the only plaintiff – had purchased Certificates in that offering.  Detroit perhaps took comfort in that fact coupled with its status as a member of the alleged class.  But any such comfort was misplaced, as several courts by that time had held that class plaintiffs lack standing to bring claims relating to securities that they themselves had not purchased.[28]  Thus, by failing to object to Wyoming's failure to include a purchaser of INDX 2007-AR5 Certificates as a plaintiff in the consolidated complaints and failing also to seek leave to intervene as a plaintiff to assert claims with respect to those Certificates, Detroit wittingly or otherwise took the chance that the class action would go forward without including claims with respect to those securities.

In these circumstances, Detroit abandoned the pursuit of its own claims with respect to the INDX 2007-AR5 Certificates on or shortly after the date on which Wyoming failed to include Detroit as a plaintiff in the consolidated complaints.  As there had been no adjudication of those claims, that abandonment was without prejudice at the time it occurred.  But time continued to pass. Now that Detroit has awakened to its predicament, it finds that the three year statute of repose with

---

[28]   *See, e.g., Hoffman v. UBS-AG,* 591 F. Supp.2d 522, 530-31 (S.D.N.Y. 2008); *In re Salomon Smith Barney Mut. Funds Fees Litig.,* 441 F. Supp.2d 579, 607 (S.D.N.Y. 2006); *In re Global Crossing, Ltd. Sec. Litig.,* 313 F. Supp.2d 189, 207 (S.D.N.Y. 2003).  *Contra, In re Countrywide Fin. Corp. Sec. Litig.,* 588 F. Supp.2d 1132, 1164-65 (C.D. Cal. 2008).

respect to its Section 11 and associated Section 15 claims has expired.  In view of Congress's categorical language, the Court may not overlook the consequences of that expiration.  Insofar as Detroit seeks leave to intervene to assert those claims, the motion must be denied.

The situation is different with respect to Detroit's Section 12(a)(2) and associated Section 15 claims.  As Detroit purchased its INDX 2007-AR5 Certificates on February 7, 2008,[29] the Section 12(a)(2) and related Section 15 claims relating to that offering are not barred by the statute of repose.

### 2.    *The Other Proposed Intervenors*

All but one of the offerings upon which the rest of the putative intervenors seek to sue occurred more than three years before the pertinent motions to intervene.  The exception is INDA 2007-AR3, as to which Philadelphia seeks to sue.  Those Certificates first were offered on June 1, 2007.[30]  As Philadelphia filed its motion to intervene on May 17, 2010, the Section 11 and related Section 15 claims relating to that offering are timely.  The rest are time-barred.

All but six of the remaining Certificate purchases upon which movants seek to bring Section 12(a)(2) and related Section 15 claims occurred more than three years before the pertinent motions to intervene.[31]  The Section 12(a)(2) and related Section 15 claims are barred by the three-

---

[29]    DI 204 Ex. E.

[30]    *See* Cpt. Ex. D at 95.

[31]    The exceptions are these:  Philadelphia purchased INDA 2007-AR1 Certificates on February 4, 2008, DI 204 Ex. C at Ex. A, Los Angeles purchased INDX 2006-AR31 Certificates on June 3, 2008, DI 204 Ex. D at Ex. A, and Mississippi purchased INDX 2006-AR12 Certificates on September 23, 2008, DI 204 Ex. F at Ex. A.  All sought intervention on May 17, 2010.  IPERS, which moved to intervene on August 19, 2010, purchased INDX

12

year statute of repose with the exception of those enumerated in footnote 31.

   B.    *Statute of Limitations*

It remains to be considered whether the claims not barred by a statute of repose nevertheless are barred by the applicable statute of limitations.

Claims under Sections 11, 12(a)(2) and 15 must be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence."[32]  As the Court held in *IndyMac I*, movants were on inquiry notice, as of June 30, 2008, of the claims that they seek to assert.[33]  All of these claims therefore are untimely unless, as movants assert, the statutes of limitations were tolled pursuant to the rule announced in *American Pipe Construction Co. v. Utah.*[34]

   1.    *Application of* American Pipe *Where Class Representative Lacked Standing*

In *American Pipe*, the respondents moved to intervene in a civil antitrust action in which they had been putative class members after the named plaintiff – the State of Utah – failed to win class certification for lack of numerosity.  The petitioners argued that the statute of limitations

_____

2007-AR15, INDX 2006-AR25, and Residential Asset Securitization Trust 2007-A8 Certificates on June 20, 2008, June 20, 2008, and October 16, 2007, respectively.  DI 239 Ex. A.

[32]

15 U.S.C. § 77m.

[33]

718 F. Supp.2d at 505-06 ("The CRL Report – which plaintiffs describe as a 'Major Report' containing 'detailed information' – contains . . . specific facts concerning the allegations at the heart of the ACC and the complaint relies extensively on it.").

[34]

414 U.S. 538 (1974).

had expired on the claims that respondents sought to assert.  The Court, however, held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."[35]  The claims therefore were timely.  "A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure.  Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable."[36]  The Court stated that this rule was "in no way inconsistent with the functional operation of a statute of limitations" – protection from the assertion of stale claims – as it tolls only claims of which defendants are put on notice in a timely fashion by virtue of the putative class complaint.[37]

The putative intervenors argue that the statute of limitations governing the claims they seek to assert was tolled under *American Pipe*.  Defendants counter that *American Pipe* does not apply where, as here, the putative class plaintiff did not have standing to assert the claims at issue.  Neither the Supreme Court nor the Second Circuit has addressed this issue,[38] and the courts

---

[35]        *Id.* at 554.

[36]        *Id.* at 553.

[37]        *Id.* at 554-55.

[38]        Defendants emphasize the Court's statement in *American Pipe* that class certification had been denied there for lack of numerosity and not, "[a]s the Court of Appeals was careful to note . . . , '. . . for failure of the complaint to state a claim on behalf of the members of the class . . . , . . . *for lack of standing of the representative*, or for reasons of bad faith or frivolity.'"  414 U.S. at 533 (citation omitted) (emphasis added).  The disclaimed scenarios, however, do not constitute ones in which claims are not tolled as a matter of law.  The Second Circuit has held that *American Pipe* applies where the putative class complaint was

that have are divided.  Those that have applied the *American Pipe* tolling rule in these or similar circumstances have stressed the policies animating that decision.[39]  Those declining to do so have emphasized the tolling rule's potential for abuse.[40]  In the circumstances of this case, this Court finds the former more persuasive.

Excluding movants' claims as time-barred would undermine the policies of efficiency and economy served by Rule 23 and *American Pipe*.  Putative class members in movants' position would be unable to rely on their purported representatives.  They instead would be forced to make protective filings to preserve their claims in the event that those representatives were determined not to have standing.  As the Supreme Court stated, "a rule requiring successful anticipation of th[is] determination . . . would breed needless duplication of motions."[41]  It should be noted, moreover, that *American Pipe* tolling does not merely *allow* putative class members "to wait on the sidelines."[42]  As the Second Circuit has recognized, such parties "are *expected and encouraged to*

---

dismissed for failure to state a claim.  *See Cullen v. Margiotta*, 811 F.2d 698, 719-21 (2d Cir. 1987), *overruled on other grounds*, *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987); *see also Korwek v. Hunt*, 827 F.2d 874, 877 (2d Cir. 1987) (discussing *Cullen*).

[39]

*E.g.*, *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 352 F. Supp.2d 429, 455-56 (S.D.N.Y. 2005), *abrogated on other grounds*, 574 F.3d 29 (2d Cir. 2009); *In re Initial Public Offering Securities Litigation*, Nos. 21 MC 92 (SAS), 01 Civ. 9741 (SAS), 01 Civ. 10899 (SAS), 2004 WL 3015304, at *4-7 (S.D.N.Y. Dec. 27, 2004).

[40]

*See Kruse v. Wells Fargo Home Mortg., Inc.*, No. 02-CV-3089 (ILG), 2006 WL 1212512, at *4-7 (E.D.N.Y. May 3, 2006); *In re Colonial Ltd. Partnership Litig.*, 854 F. Supp. 64, 82 (D. Conn. 1994); *In re Crazy Eddie Securities Litigation*, 747 F. Supp. 850, 859 (E.D.N.Y. 1990); *In re Elscint, Ltd. Securities Litigation*, 674 F. Supp. 374 (D. Mass. 1987).

[41]

*American Pipe*, 414 U.S. at 553-54.

[42]

*Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 203 (S.D.N.Y. 1992).

remain passive during the early stages of the class action."[43]  This Court will not punish movants for acting in accordance with the law's urging.

Nor would tolling surprise defendants or force them to defend against stale claims. The original class complaints notified defendants of the claims that movants now seek to assert. Defendants therefore were apprised "[w]ithin the period set by the statute of limitations . . . [of] the essential information necessary to determine both the subject matter and the size of the prospective litigation."[44]

Parenthetically, class certification has not yet been ruled upon here.  This case therefore does not implicate *Korwek v. Hunt*,[45] where the Second Circuit held that *American Pipe* does not "appl[y] to permit the filing by putative class members of a subsequent class action nearly identical in scope to the original class action which was denied certification."[46]  The court there was concerned with attempts to use the *American Pipe* tolling rule as a mechanism to relitigate the merits of class certification.[47]  Here, by contrast, movants sought to intervene as class representatives, to replace parties without standing to assert movants' claims, before the merits of class certification

---

[43]
    *Cullen*, 811 F.2d at 719 (emphasis added).

[44]
    *American Pipe*, 414 U.S. at 555.

[45]
    827 F.2d 874 (2d Cir. 1987).

[46]
    *Id.* at 876 (emphasis omitted); *see also id.* at 879 (reviewing cases standing for the proposition that *American Pipe* "was not intended to be applied to suspend the running of statutes of limitations for class action suits files after a definitive determination of class certification").  *See IndyMac I*, 718 F. Supp.2d at 503-04.

[47]
    *Korwek*, 827 F.2d at 879 ("Appellants ignored the district court's express finding that the original action was unwieldy . . . .").

had been litigated.  Several courts have permitted this.[48]

### 2.    Jurisdiction

Defendants argue also that *American Pipe* tolling does not apply for jurisdictional reasons.  The argument, which is premised on a Seventh Circuit decision that did not consider *American Pipe*,[49] proceeds as follows:  "Because the Lead Plaintiffs never had standing to assert [the claims at issue], there was in all events never any actual case or controversy before this Court based on those claims."  Thus, "the court . . . lacks jurisdiction to toll the statutes of . . . limitations" or, phrased somewhat differently, "none of the Lead Plaintiffs' filings could have tolled the statute of repose or limitations" for the claims that movants seek to assert.[50]  This argument is but another way of contending that *American Pipe* does not apply where the putative class representatives lacked standing to assert the proposed intervenors' claims.  It is without merit.

The question before this Court is the same one faced by any court considering the application of *American Pipe*: Should the claims that movants seek to assert, despite the apparent expiration of the applicable statutes of limitations, nevertheless be treated as timely for equitable

---

[48]

    *See California Public Employees' Retirement System v. Chubb Corp.*, No. Civ. 00-4285 (GEB), 2002 WL 33934282, at *29 (D.N.J. June 26, 2002) (collecting cases).

[49]

    In *Walters v. Edgar*, 163 F.3d 430 (7th Cir. 1998), the court affirmed the dismissal of a class action based on the putative class representative's lack of standing to maintain the claims. The court rejected the argument that class members with standing should have been substituted as representatives on the ground that "plaintiffs never had standing to bring th[e] suit, and so federal jurisdiction never attached." *Id.* at 432.  *But see Rose v. Arkansas Valley Environmental*, 562 F. Supp. 1180, 1193 (W.D. Mo. 1983) (rejecting similar reasoning and noting that "it can hardly be said that a suit commenced by one who lacks standing is in any literal sense a 'nonexistent' suit").

[50]

    *See* DI 264 at 18.

reasons on account of the earlier filed complaint?  Tolling is not something that the Court "does" – and for which it would need jurisdiction – during the pendency of the earlier complaint.  The inquiry is based on present considerations.  Defendants appear to be laboring under the misconception that statutes of limitations may be tolled only where a court has jurisdiction over the pertinent claims during the period of tolling.  This simply is not the case.  Under the discovery rule, for example, a statute of limitations may be tolled for a period during which the facts giving rise to a claim are not even known to the prospective plaintiff – let alone put before a court of competent jurisdiction.

### 3.    *The Timeliness of the Claims that Movants Seek to Assert*

As stated above, the statute of limitations for the claims that movants seek to assert began running on June 30, 2008.  And, as the Court held in *IndyMac I*, "the relevant complaint for purposes of the statutes of limitations . . . is that filed in this action on May 14, 2009" by Detroit.[51]  Thus, by the time the Detroit complaint was filed, all but 47 days of the one-year statute of limitations applicable to these claims had expired.  The statute of limitations then was tolled until the Court's June 21, 2010 order dismissing the claims relating to the offerings as to which Wyoming did not have standing to sue.  Movants therefore had until 47 days after that order – until August 7, 2010 – to seek intervention.  All did so with the exception of Iowa, which did not move to intervene until August 23, 2010.

Iowa makes three arguments that its claims are not barred by the statute of limitations.  All are without merit.

---

[51]    *IndyMac I*, 718 F. Supp.2d at 505.

First, Iowa argues in a footnote that being put on inquiry notice of its claims did not trigger the statute of limitations.[52]  It relies, however, on the Supreme Court's decision in *Merck & Co., Inc. v. Reynolds*,[53] which held that inquiry notice does not trigger the statute of limitations in the specific context of 28 U.S.C. § 1658 – which is not at issue here – based on the precise language of that statute.[54]  That holding does not apply here.

Second, Iowa contends that, even after the Court's decision in *IndyMac I*, "the '*statute of limitations remain[ed] tolled for an intervening potential class members [*sic*] to continue the class action.'"[55]  The argument, apparently, is that the limitations period remains tolled for a reasonable length of time to permit intervention.  Even if this proposition were true, however, it would not aid Iowa.  The putative intervenors had 47 days – a sufficient period to be sure – after *IndyMac I* during which to seek intervention, and all but Iowa made timely motions.  Iowa has offered no excuse for waiting more than two months after that decision to move for intervention.[56]

Finally, Iowa argues that Rule 24, which governs intervention, should be construed liberally to allow intervention in circumstances like these.[57]  But it does not matter how liberally

---

[52]

DI 267 at 9 n.14.

[53]

130 S. Ct. 1784 (2010).

[54]

*Id.* at 1797-98.

[55]

DI 267 at 9 (quoting *In re Nat'l Aus. Bank Securities Litig.*, No. 03 Civ. 6537 (BSJ), 2006 WL 3844463, at *5 (S.D.N.Y. Nov. 8, 2006)).

[56]

This is especially egregious because the Court, at a February 17, 2010 hearing, informed the parties of its intention to dismiss for lack of standing the claims relating to offerings in which Wyoming had not purchased Certificates.

[57]

DI 267 at 10.

Rule 24 is construed.  The claims that Iowa seeks to assert are time-barred.  No liberality of construction could change that.

As the claims that Iowa seeks to assert are time-barred, it cannot intervene to assert them.

II.     *Motion for Leave to Amend the ACC*

The Court turns now to the motion, made by Wyoming and several of the proposed intervenors, to amend the ACC to add Countrywide and Merrill Lynch as defendants to certain claims.

A.     *Wyoming*

All of the offerings as to which Wyoming seeks to add claims against Countrywide and Merrill Lynch, and all of its purchases of securities in those offerings, occurred more than three years before Wyoming moved for leave to amend the ACC.  Wyoming does not dispute that the claims it seeks to add, at least on their face, are barred by the applicable statutes of repose.  Instead, it argues that the claims are timely under the FED. R. CIV. P. 15(c) relation back doctrine.  But, as stated above, Rule 15's relation back doctrine cannot save claims otherwise barred by a statute of repose.[58]  Wyoming's motion for leave to the amend the ACC therefore must be denied as futile on the ground that the claims it seeks to assert are time-barred.

---

[58]     *See supra* p. 7.  *Accord In re Lehman Bros. Secur. Litig.*, ___ F.R.D. ____, 2011 WL 1453790, at *4 (S.D.N.Y. Apr. 13, 2011).

B.      *The Proposed Intervenors*

Philadelphia, Los Angeles, Mississippi and Detroit Retirement – as distinguished from Detroit[59] – join in Wyoming's motion to amend the ACC.  Countrywide and Merrill Lynch allegedly were underwriters of some of the offerings as to which these movants sought to assert claims.  The putative intervenors seek leave to amend the ACC to add Countrywide and Merrill Lynch as defendants, assuming that intervention is granted with respect to the pertinent claims.

As Detroit Retirement's motion to intervene is being denied in its entirety, the motion to amend must be denied as to that movant.

The motion to amend must be denied as to Philadelphia as well.  Philadelphia seeks leave to amend the ACC to add Merrill Lynch as a defendant to claims respecting the INDA 2007-AR3 offering.  That offering, however, occurred on June 1, 2007.[60]  Whereas Philadelphia moved to intervene on May 17, 2010, within three years of the offering, the motion to amend was not filed until August 20, 2010 – after the expiration of the three year repose period.  The claims that Philadelphia seeks to assert against Merrill Lynch therefore are untimely.

The Court is permitting Los Angeles and Mississippi to intervene to assert Section 12(a)(2) claims relating to the INDX 2006-AR31 and INDX 2006-AR 12 offerings, respectively.  Merrill Lynch allegedly was the underwriter of each.  As the motion to amend was filed within three years of the pertinent Certificate purchases, the claims sought to be added are not barred by the statute of repose.  Merrill Lynch argues, however, that the one-year statute of limitations governing movants' claims had expired by the time they moved to amend.  Movants do not dispute that they

---

[59]      *See supra* note 13.

[60]      Cpt. Ex. D at 95.

moved to amend more than two years after they were on inquiry notice of the claims they seek to add.[61]  They argue instead that the claims are timely under the relation back doctrine.

Under Rule 15(c)(1)(C)(ii), "an amendment to a pleading relates back to the date of the original pleading when . . . the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Movants argue that the amendment they seek to make to the ACC relates back to May 14, 2009, when Detroit filed the first complaint in this action.  The parties dispute whether Wyoming's decision not to assert claims against Merrill Lynch in the ACC, but to sue BoA instead, was due to a "mistake."

In *Krupski v. Costa Crociere S. p. A.*,[62] the Supreme Court "rejected the idea that plaintiff's 'knowledge of a party's existence' [alone] constitutes an 'absence of mistake.'"[63]  Even if a plaintiff knew of the unnamed party's existence, it made a "mistake" for purposes of Rule 15 where the complaint makes "allegations respecting a named party that, in fact, concern the originally unnamed party plaintiff seeks to add."[64]  This is because Rule 15 "was enacted to respond to . . . wrongful identification of the party whose conduct is described in the complaint."[65]  That sort of error, however, is not what occurred here.

---

[61]
    *See IndyMac I*, 718 F. Supp.2d at 505-06.

[62]
    130 S. Ct. 2485 (2010).

[63]
    *IndyMac I*, 718 F. Supp.2d at 506 (quoting *Krupski*, 130 S. Ct. at 2494).

[64]
    *IndyMac I*, 718 F. Supp.2d at 507.

[65]
    *Id.*

Lead plaintiff Wyoming was quite aware of Merrill Lynch's alleged conduct and role in the events at issue.  Specifically, the ACC alleges that "Merrill Lynch was listed as an underwriter and participated in the drafting and dissemination of one or more of the relevant Offering Documents."[66]  This notwithstanding, Wyoming chose not to name Merrill Lynch as a defendant but to sue instead BoA "in its [alleged] capacity as *successor-in-interest* to Merrill, Lynch."[67]  Movants do not, and cannot, claim that Wyoming made allegations as to BoA that in fact should have been made as to Merrill Lynch.  Instead, Wyoming's "mistake" was insufficient pleading, viz. failure to allege any facts that would support holding BoA liable for Merrill Lynch's acts.[68]  Its "deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity."[69]

Merrill Lynch was entitled to read the ACC and to assume that Wyoming, despite having a detailed awareness of Merrill Lynch's role and conduct in the events at issue, chose instead to sue BoA on the basis of the latter's independent status as Merrill Lynch's parent company.  In all the circumstances, the claims that movants seek to assert against Merrill Lynch do not relate back to the earlier-filed complaint and therefore are barred by the statute of limitations.  Consequently, leave to amend would be futile.

---

[66]  Cpt. ¶ 33.

[67]  *Id.*

[68]  *IndyMac I*, 718 F. Supp.2d at 508.

[69]  *Krupski*, 130 S. Ct. at 2494.

*Conclusion*

The motions to intervene as class representatives [DI 202, 219, 237] are granted with respect to (1) Philadelphia's Section 11 claims arising out of its purchase of INDA 2007-AR3 Certificates, (2) Philadelphia's Section 12(a)(2) claims arising out of its purchase of INDA 2007-AR1 Certificates, (3) Los Angeles's Section 12(a)(2) claims arising out of its purchase of INDX 2006-AR31 Certificates, (4) Detroit's Section 12(a)(2) claims arising out if its purchase of INDX 2007-AR5 Certificates, (5) Mississippi's Section 12(a)(2) claims arising out of its purchase of INDX 2006-AR12 Certificates, and (6) these movants' related Section 15 claims asserting vicarious liability for the underlying claims listed above.  The motions to intervene are denied in all other respects.

The motion for leave to amend the ACC [DI 229] is denied in its entirety.

SO ORDERED.

Dated:      June 21, 2011

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)