UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE: INDYMAC MORTGAGE-BACKED                    Master Docket
SECURITIES LITIGATION                             No. 09 Civ. 4583 (LAK)

This document relates to:          *All Actions*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

Denis F. Sheils                         Daniel E. Barenbaum
Joseph C. Kohn                          Nicole C. Lavallee
William E. Hoese                        Joseph J. Tabacco, Jr.
KOHN, SWIFT & GRAF., P.C.               Patrick T. Egan
                                        Anthony D. Phillips
Lawrence P. Kolker                      Julie Goldsmith Reiser
Gregory M. Nespole                      BERMAN DEVALERIO
Rachel S. Poplock                       *Attorneys for Lead Plaintiffs Wyoming State*
WOLF HALDENSTEIN ADLER FREEMAN &        *Treasurer and Wyoming Retirement System*
HERZ LLP

Steven J. Toll                          Eric R. Levine
COHEN MILSTEIN SELLERS & TOLL PLLC      Eric Aschkenasy
                                        EISEMAN LEVINE LEHRHAUPT &
*Attorneys for Plaintiff Police and Fire*   KAKOYIANNIS, P.C.
*Retirement System of the City of Detroit*

                                        Michael W. Fitzgerald
                                        Robert L. Corbin
Ira N. Richards                         Joel M. Athey
TRUJILLO RODRIGUEZ & RICHARDS, LLC      CORBIN, FITZGERALD & ATHEY LLP

Timothy J. MacFall                      Robert H. Fairbank
RIGRODSKY & LONG, P.A.                  Kimberly M. West
                                        Richard D. Gluck
*Attorneys for Plaintiff City of Philadelphia*   Michael B. Norman
*Board of Pensions and Retirement*      FAIRBANK & VINCENT

                                        *Attorneys for Individual Defendants*

| | |
|---|---|
| Dean J. Kitchens | William R. Stein |
| Robert F. Serio | Scott H. Christensen |
| Jonathan C. Dickey | Kenneth M. Katz |
| Aric H. Wu | HUGHES HUBBARD & REED LLP |
| Eric M. Creizman | *Attorneys for Defendant IndyMac MBS, Inc.* |
| GIBSON, DUNN & CRUTCHER LLP | |
| *Attorneys for Underwriter Defendants* | |

LEWIS A. KAPLAN, *District Judge.*

       This putative class action concerns mortgage pass-through certificates (the "Certificates") issued by IndyMac MBS, Inc. ("IndyMac MBS") in ten offerings pursuant to two registration statements and related prospectuses and prospectus supplements (the "Offering Documents").[1] Lead Plaintiffs Wyoming State Treasurer and Wyoming Retirement System allege that the Certificates were issued pursuant to materially misleading Offering Documents in violation of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act").[2] The matter is before the Court on Lead Plaintiffs' motion for class certification, appointment as class representatives, and appointment of class counsel.[3]

---

[1]      Relevant excerpts of the Offering Documents can be found at Egan Decl. [DI 277], Exs. C, D. The Offering Documents include a February 24, 2006 registration statement (the "2006 Registration Statement"), a February 14, 2007 registration statement (the "2007 Registration Statement", collectively the "Registration Statements"), and the prospectuses and prospectus supplements incorporated therein. *See* Second Amended Consolidated Complaint ("SACC") [DI 337], ¶¶ 1, 6.

[2]      15 U.S.C. §§ 77k(a)(5), 77l(a)(2), 77o.

[3]      DI 276.

*Background*

I.      *The Parties*

    A.      *Lead Plaintiffs*

        Lead Plaintiffs were appointed on July 29, 2009.[4] Wyoming State Treasurer manages

more than $10 billion in non-pension fund assets.[5]   Wyoming Retirement System administers

retirement programs.[6]   Lead Plaintiffs allegedly purchased or acquired Certificates in the ten

offerings pursuant and/or traceable to the Registration Statements.[7]


    B.      *Defendants*

        The three groups of defendants still party to this case include IndyMac MBS, the

Individual Defendants, and the Underwriter Defendants.

        IndyMac MBS was a wholly-owned subsidiary of IndyMac Bank, F.S.B. ("IndyMac

Bank"), which was closed by the FDIC on July 11, 2008, and is not a party to this case.[8] IndyMac

MBS was the registrant of the securities covered by the Offering Documents.[9]

---------------------------------

[4]

    DI 58.

[5]

    SACC ¶ 20.

[6]

    *Id.* ¶ 21.   The two Lead Plaintiffs are referred to collectively as "Lead Plaintiffs" or
"Wyoming."

[7]

    *Id.* ¶¶ 20-21, Exs. A & B.

[8]

    *Id.* ¶¶ 24, 26.

[9]

    *Id.* ¶ 26.

The Individual Defendants are IndyMac MBS's former officers and directors.[10] Each signed at least one of the Registration Statements.[11]

The Underwriter Defendants are six financial institutions, all of whom were underwriters in the offerings and all of whom are alleged to have participated in drafting and disseminating the Offering Documents.[12]

## II.    *The Certificates*

A Certificate is a type of mortgage backed security that entitles its owner to a portion of the revenue stream generated by an underlying pool of mortgage loans,[13] all of which were originated or acquired by IndyMac Bank.[14]  These loans then were transferred to IndyMac MBS, which bundled them into mortgage pools and transferred them to trusts.[15]  The trusts issued the

---

[10]

The Individual Defendants include John Olinski, S. Blair  Abernathy, Lynette Antosh, Raphael Bostic, Samir Grover, Simon Heyrick, and Victor H. Woodworth. SACC ¶¶ 28-34.

The Court is aware that a motion currently is pending for preliminary approval of a partial settlement between plaintiffs and the Individual Defendants.  This motion seeks approval also  of a settlement class.  *See* DI 363.

[11]

*Id.*

[12]

*Id.* ¶¶ 38-48. The Underwriter Defendants still party to this case are Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., J.P. Morgan Securities Inc., Morgan Stanley & Co., Inc., RBS Securities Inc. (f/k/a Greenwich Capital Markets, Inc.), and UBS Securities LLC.  *See also* DI 294, at 9 n.1.

[13]

*Id.* ¶ 63.

[14]

*Id.* ¶ 64.

[15]

*Id.* ¶ 66.

Certificates to IndyMac MBS,[16] which sold them to the Underwriter Defendant(s), which in turn offered them to investors.[17]

The Certificates' ratings have declined since their initial offerings, and the percentage of loans in the pools underlying each Certificate that has defaulted is alleged to have increased as well.[18]

### III.   *The Second Amended Consolidated Complaint*

The SACC [19] alleges violations of Sections 11, 12(a)(2,) and 15 of the Securities Act, based on Wyoming's claims that the Offering Documents misled purchasers of the Certificates by stating that IndyMac Bank evaluated information about borrowers' income, assets, and employment.[20] Relying heavily on two independent reports,[21] Wyoming alleges that these statements were false and misleading because IndyMac Bank actually had abandoned its underwriting standards

---

[16]

    *Id.* ¶ 76.

[17]

    *Id.* ¶ 77.

[18]

    *Id.* ¶ 191, Exs. E-G.

[19]

    The SACC is substantially identical to the Amended Consolidated Complaint filed on October 29, 2009. *See* DI 131. It varies only insofar as it adds Philadelphia and Detroit as plaintiffs-intervenors. *See* DI 341 (clarifying why SACC was filed after a motion to amend the complaint was denied).

[20]

    *Id.* ¶¶ 112-122, 221-50.

[21]

    The reports were written by the Treasury Department Office of Inspector General ("OIG") and an entity referred to as "CRL." *See* OIG, Audit Report (OIG-09-032), *Safety and Soundness: Material Loss Review of IndyMac Bank, FSB*, February 26, 2009, at 2, 7, *available at* http://treasury.gov/inspector-general/audit-reports/2009/oig09032.pdf (the "OIG Report").

and instead had "rapidly approved" mortgage loans "to people with poor credit or those who did not have the ability to repay the loans."[22]   This allegedly made the Certificates "far riskier than represented . . . [and] not equivalent to other investments with the same credit rating."[23]  Wyoming alleges that borrowers defaulted on the mortgage loans underlying the Certificates and that the value of the Certificates decreased.[24]  Credit ratings agencies subsequently downgraded the Certificates' ratings to "junk."[25]

IV.    *Procedural History*

On May 14, 2009 and June 29, 2009, respectively, Plaintiff Police and Fire Retirement System of the City of Detroit ("Detroit") and Wyoming filed similar class action complaints.[26]  Various parties moved to be appointed lead plaintiff and to consolidate the two actions.[27]  The Court named Wyoming as lead plaintiff, granted the motion to consolidate, and ordered the filing of a consolidated class complaint.[28] Wyoming then filed the Amended

---

[22]

SACC ¶ 8.

[23]

*Id.* ¶ 16.

[24]

*Id.* ¶¶ 213-17 .

[25]

*Id.*¶¶ 16, 214.

[26]

*Police and Fire Ret. Sys. of the City of Detroit v. IndyMac MBS, Inc., et al.*, 09 Civ. 4583 (LAK); *Wyo. State Treasurer v. Olinski*, 09 Civ. 5933 (LAK).

[27]

*See, e.g.,* DI 10; DI 14; DI 17.

[28]

DI 58.

Consolidated Complaint ("ACC") on October 29, 2009.[29]

The Court later ruled on defendants' motions to dismiss the ACC, significantly narrowing the scope of this litigation.[30]  It dismissed claims as to all but the ten offerings in which Wyoming allegedly had purchased Certificates, holding that those were the only offerings with respect to which Wyoming had standing to sue.  The only substantive claims set forth in the SACC that were allowed to proceed were the Section 11, 12(a)(2), and 15 claims based on IndyMac Bank's alleged abandonment of its underwriting standards.[31]

Plaintiffs City of Philadelphia Board of Pensions and Retirement ("Philadelphia") and Detroit moved to intervene as to certain offerings which Wyoming had not purchased and as to which Wyoming's claims therefore had been dismissed.[32]  The Court granted these motions in part and denied them in part, and Philadelphia and Detroit intervened as to three additional offerings.[33]  Lead Plaintiffs then filed the SACC on August 15, 2011, adding Philadelphia and Detroit as

---

[29]  DI 131.

[30]  *In re IndyMac Mortg.-Backed Sec. Litig.*, 718 F. Supp. 2d 495 (S.D.N.Y. 2010) ("*IndyMac I*") .

[31]  *IndyMac I*, 718 F. Supp. 2d at 500-02, 508. The motion to dismiss was granted with respect to claims based on appraisals practices, loan-to-value-ratios, and ratings methodology. Claims against certain individuals, alleged underwriters, and ratings agencies were dismissed in part in *IndyMac I*, and in part in an earlier order.  *See* DI 195.

[32]  DI 202.  Several other parties filed motions to intervene as well. *See* DI 202; DI 219; DI 237.

[33]  *See In re IndyMac Mortg.-Backed Sec. Litig*, 793 F. Supp. 2d 637 (S.D.N.Y. 2011) ("*IndyMac II*") .

plaintiffs-intervenors, but otherwise leaving the substance of the allegations unchanged.[34]

## V.    *The Present Motion*

Wyoming moves for an order certifying the following proposed class:

"All persons or entities who purchased or otherwise acquired beneficial interests in Certificates offered to the public in 10 Offerings ('Offerings') . . . pursuant or traceable to IndyMac MBS Registrations Statements dated February 24, 2006, as amended and/or February 14, 2007, as amended ("Registration Statements") . . . and the Prospectuses and Prospectus Supplements issued thereunder for the Offerings and incorporated by reference (collectively, with the Registration Statements, the 'Offering Documents') and who were damaged thereby (the 'Class')."[35]

Wyoming moves also to be appointed class representatives and, pursuant to Rule 23(g), for approval of its counsel, Berman DeValerio, as class counsel.[36]  Defendants oppose the motion, principally by asserting that Wyoming has failed to satisfy Rule 23(b)(3)'s requirements of predominance and superiority.

### *Discussion*

## I.    *Legal Standards*

Before certifying a class, a district court is obliged to conduct a "rigorous analysis"

---

[34]

*See* DI 337;  DI 341.

Lead Plaintiffs' motion for class certification was filed before the Court decided the motions to intervene.  Accordingly, the briefing on the class certification motion does not address the three offerings purchased by plaintiffs-intervenors Philadelphia and Detroit. The Court therefore does not consider those offerings in deciding this motion.

[35]

DI 276, at 2.

[36]

*Id*.  The lengthy pendency of this motion is a result of the Court having awaited the outcome of an appeal raising similar issues in another case.

9

to determine whether the plaintiffs have satisfied all of the Rule 23(a) and Rule 23(b)(3) requirements.[37]   It "may certify a class only after [it] . . . resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met."[38]   The burden of demonstrating by a preponderance of the evidence that these requirements have been met, moreover, rests with the moving party.[39]   Nevertheless, courts in this and other districts have held that suits alleging violations of Sections 11, 12(a)(2), and 15 of the Securities Act are "especially amenable" to class action certification and resolution.[40]

## II.      Rule 23(a) Requirements

The prerequisites to any class certification are that:

"(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

---

[37]

In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006) ("In re IPO I"); In re Parmalat Sec. Litig., No. 04 MD 1653 (LAK), 2008 WL 3895539, at *2 (S.D.N.Y. Aug. 21, 2008).

[38]

In re IPO I, 471 F.3d at 41.

[39]

See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 201-03 (2d Cir. 2008).

[40]

E.g., Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc., 277 F.R.D. 97, 101 (S.D.N.Y. 2011) ("Pub. Emps. v. Merrill") (citing Achem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997); In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267 (S.D.N.Y. 2003)).

representative parties will fairly and adequately protect the interests of the class."[41]

## A.   Numerosity

Rule 23(a)'s first requirement, numerosity, generally is presumed "at a level of 40 members,"[42] and may be found where "the number of class members is sufficiently large so that joinder . . . would make litigation needlessly complicated and inefficient."[43]  Numerosity is appropriately found where "the joinder of all [class] members is impracticable."[44]   Moreover, decisions in this district have concluded that a class may be certified even where certain sub-groups of that class do not meet the presumptive 40-member requirement.[45]

Here, Wyoming has demonstrated that there are "at least 714 unique investors who purchased or otherwise acquired Certificates in the 10 Offerings."[46]   Defendants' own expert has indicated that there were at least 40 investors in all but two of the offerings,[47] 39 potential members

---

[41]

FED. R. CIV. P. 23(a).

[42]

*Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

[43]

*Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002).

[44]

Fed. R. Civ. P. 23(a)(1).

[45]

*See Pub. Emps v. Merrill*, 277 F.R.D. at 105 (certifying class where one offering at issue had only 36 investors); *see also New Castle v. Yonkers Contracting Co.*, 131 F.R.D. 38, 41 (S.D.N.Y. 1990) (certifying class with a total of 36 potential members).

[46]

DI 279, at 15-16; Egan Decl., Ex. E, Report of Steven P. Feinstein, Ph.D ("Feinstein Rep.") ¶¶ 21, 74-79.

[47]

Levallee Decl. [DI 301], Ex. 4, Rebuttal Report of Steven P. Feinstein, Ph.D. ("Feinstein Reb.") ¶¶ 108, 117 (noting that defendants' expert Dr. Torous stated that one offering, INDX 2006 AR-15 had "39 distinct investors" but that this estimate did "not include 18

in another, and 22 in the final.[48]

In this case, it would be impractical to deny certification on the basis that two of the offerings in question did not meet the 40-member presumption level – especially given that one of them is short, if at all, by just one member.  There are more than 700 members in the class.  Denying class certification for lack of numerosity in all the circumstances would present a considerable strain with no commensurate benefit.  The numerosity requirement is satisfied.

B.      *Commonality, Typicality, and Adequacy of Representation*

The requirements of commonality, typicality, and adequacy of representation are closely related.[49]

---

transactions" that might identify other investors); Levallee Decl., Ex. 11 (identifying 22 class members who purchased INDX 2006-AR 11); DI 300, at 20 n.45 (elaborating arguments why INDX 2006-AR11 may have 40 members).  In any event, Wyoming does not have standing to assert claims as to INDX 2006 AR-11 for reasons discussed in Part II.B, and so claims as to that offering are dismissed.

[48]
Feinstein Reb. ¶ 117.

This and other courts have rejected the argument that numerosity must be established on a tranche-by-tranche basis.  *See Tsereteli v. Residential Asset Securitization Trust 2008-A8,* No. 08 Civ. 10637 (LAK), DI 100, at 9 & n.40; *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, No. 09 Civ. 1110 (HB), 2012 WL 336146, at *2  (S.D.N.Y. Feb 3, 2012) ("*Pub. Emps. v. Goldman Sachs*") ("The invocation of tranches as a means to defeat class certification has failed in similar cases and fails here." (citing *Pub. Emps. v. Merrill*, 277 F.R.D. at 109; *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897 (HB), 2011 WL 781215, at *2 (S.D.N.Y. Mar. 7, 2011))); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160, 163, 165-66 (S.D.N.Y. 2011) ("*NJ Carpenters*"), *aff'd* 2012 WL 1481519 (2d Cir. Apr. 30, 2012) (noting that defendants could not "provide[] authority" for a tranche-by-tranche numerosity requirement so plaintiffs were entitled to presumption of numerosity, and rejecting similar arguments for typicality as well); *see also Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09 Civ. 3701 (JPO), 2012 WL 1788142, at *7 (S.D.N.Y. May 15, 2012) (outlining recent decisions in this court rejecting tranche-by-tranche requirement for class certification).

[49]
Courts have noted that all three requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether

Commonality is satisfied where a single issue of law or fact is common to the class.[50]

It is "plainly satisfied" in a securities case where "the alleged misrepresentations in the prospectus

relate to all the investors, [because the] existence and materiality of such misrepresentations

obviously present important common issues."[51]  Typicality is satisfied where "each class member's

claim arises from the same course of events and each class member makes similar legal arguments

to prove the defendant's liability."[52]  So long as the "plaintiffs assert . . . that defendants committed

the same wrongful acts in the same manner, against all members of the class, they establish the

necessary typicality."[53]

The adequacy of representation requirement is met where "(1) plaintiff's interests are

[not] antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are

---

the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2553 (2011) ("The commonality and typicality requirements of Rule 23(a) tend to merge." (internal citations omitted)); *Dura-Bilt v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981) ("The typicality prerequisite overlaps with the common question requirement of Rule 23(a)(2) and the adequate representation requirement of Rule 23(a)(4).").

[50]

  *Wal-Mart*, 131 S. Ct. at 2556 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do." (internal quotations omitted)).

[51]

  *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972); *In re Prestige Brands Holdings, Inc. Sec. Litig.*, No. 05 Civ. 6924 (CLB), 2007 WL 2585088, at *2 (S.D.N.Y. Sept. 5, 2007).

[52]

  *In re Flag Telecom Holdings Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 126 (S.D.N.Y. 1997) (finding typicality is met where plaintiffs "have the incentive to prove all of the elements of the causes of action which would be presented by the individual members of the class were they initiating individual actions" (citations omitted)).

[53]

  *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 72-73 (S.D.N.Y. 2009).

qualified, experienced and able to conduct the litigation."[54]   It generally requires "strong evidence" that the class representative's "interests are not antagonistic to those of the class."[55]

   As with many other securities class actions, this case turns on the central issue of whether certain statements and non-disclosures common to the Offering Documents rose to the level of material misrepresentations or omissions.[56]   Plaintiffs here allege that (1) "IndyMac Bank originated and/or acquired the risky mortgage loans that IndyMac MBS then bundled together into mortgage pools," (2) "[p]ursuant to the Offering Documents, the IndyMac Entities [and] the Underwriter Defendants . . . solicited, sold and distributed" the offerings, and (3) "[t]he Offering Documents contain untrue statements of material fact, omit to state material facts required to be stated therein, or omit to state material facts necessary to make the statements therein not misleading."[57]   Previous instances of similar claims readily have been found to meet the requirements of commonality, typicality, and adequacy of representation.[58]

   Defendants' arguments that these requirements have not been met here focus on three assertions: (1) no named plaintiff has standing to assert claims with respect to one offering and the

---

[54]
  *Baffa v. Donaldson, Luffkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

[55]
  *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008).

[56]
  *See, e.g.,* SACC ¶¶ 7-9.

[57]
  *Id.* ¶¶ 4-7. Plaintiffs allege also that these omissions and misrepresentations in the Offering Documents were substantially similar. *See* Egan Decl., Exs. C, D.

[58]
  *See Pub. Emps. v. Goldman Sachs*, 2012 WL 336146*; Pub. Emps. v. Merrill*, 277 F.R.D. 97*; N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2011 WL 3874821 (S.D.N.Y. Mar. 29, 2010) ("*NJ v. DLJ*"); *NJ Carpenters*, 272 F.R.D. 160 (finding Rule 23(a) requirements were met, but not Rule 23(b)(3) requirements).

claims as to that offering must be dismissed, (2) Wyoming delegated investment decisions to parties who had direct meetings with IndyMac, subjecting it to unique defenses, and (3) Wyoming is subject to unique issues regarding materiality and damages.[59]  Defendants assert that these considerations are sufficient to defeat a finding of typicality, commonality, or adequacy.

Defendants' first argument regards Wyoming's standing to pursue claims as to offering INDX 2006-AR11 ("AR11").  A party does not have standing to bring a Section 12(a)(2) claim where it purchased the security in a private or secondary market.[60]  Here, Wyoming purchased AR11 Certificates ten months after the initial offering and admits that it did so "in the secondary market."[61]  It therefore lacks standing to bring a Section 12(a)(2) claim as to AR11.  The Court previously determined that Wyoming is time-barred from pursuing a Section 11 claim as to this same offering.[62]  Accordingly, Wyoming does not have a valid claim with respect to this offering under either Section 11 or Section 12(a)(2).[63]  While it is true generally, as Wyoming notes, that a lead plaintiff "can represent class members with section 12(a)(2) claims despite the fact that it only has

---

[59]

DI 294, at 30-33.

[60]

*Pub. Emps. v. Merrill*, 714 F. Supp. 2d 475,  484 (S.D.N.Y. 2010) (stating Section 12(a)(2) standing is limited to "persons who have directly purchased the securities from underwriting defendants in the subject public offering(s), and not in the secondary market"); *In re Sterling Foster & Co., Inc., Sec. Litig.*, 222 F. Supp. 2d 216, 244 (E.D.N.Y. 2002) ("[P]urchasers in private or secondary market offerings are precluded from bringing actions under Section 12(a)(2).").

[61]

DI 294, at 30; DI 300, at 17.

[62]

*See IndyMac I*, 718 F. Supp. 2d at 513 (holding Wyoming only had standing to pursue Section 12(a)(2) claims as to INDX 2006-AR11).

[63]

This of course means that it does not have a claim under Section 15, which requires that a party have a viable Section 11 or Section 12 claim. *See* 15 U.S.C. § 77o.

section 11 claims,"[64] or *vice versa,* that rule, if it may be so characterized, does not apply to this case. Wyoming cannot represent class members who purchased AR11 because it does not have any viable Securities Act claim as to that offering. Because no named plaintiff has a claim regarding AR11, all claims based on that offering are dismissed from this action. This of course does not affect the propriety of class certification as to the other nine offerings.

   Defendants' second argument is that Wyoming's delegation of many or all of its investment decisions to investment advisors subject it to unique defenses. Questions as to what Lead Plaintiffs or their investment advisors knew as a result of meetings with IndyMac, however, "are insufficient to defeat" a finding that commonality, typicality, or adequacy have been met "because the nature of the claims that Plaintiffs must prove remains unchanged."[65] The commonality, typicality, and adequacy requirements may be met in a securities class action based on something as simple as a commonly alleged "disregard of underwriting guidelines."[66] Whether or not investors' knowledge levels varied does not change the fundamental nature of the claims in the SACC that the Offering Documents were materially misleading.[67]

   Finally, defendants argue that the issues Wyoming faces in demonstrating materiality and damages are unique and defeat a finding of commonality, typicality, or adequacy. The argument

---

[64]

   *NJ Carpenters*, 272 F.R.D. at 165.

[65]

   *Id.* at 167.

[66]

   *Id*.

[67]

   Defendants' reliance on knowledge to defeat class certification is discussed further below in Part III.A.2.i.

ignores that materiality for Securities Act claims is an issue subject to generalized proof.[68] Similarly, damages in Securities Act claims are calculated based on a statutory formula,[69] so any differences in damages awards do not defeat class certification, particularly where, as here, they are "merely speculative."[70] "[A] common course of conduct and a unitary legal theory for the entire class period" is alleged, namely that the Offering Documents contain materially misleading statements or omissions, and commonality, typicality, and adequacy of representation are satisfied.[71]

---

[68]

See *Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d Cir. 2004) (materiality gauged by the objective standard of whether "any reasonable investor could consider the [misstatement] important in light of adequate cautionary language set out in the same offering" and thus is determined on a common basis for all class members (citing *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 257 (2d Cir. 2002))); *NJ Carpenters*, 272 F.R.D. at 168 ("[T]he very basic rule [is] that the materiality of a misstatement or omission under the Securities Act provisions alleged here is judged against an objective standard . . . . and [ ] Plaintiffs allege the same exact misstatements and omissions are misleading as they pertain to each tranche of the offering." (internal citations omitted)).

[69]

See 15 U.S.C. § 77k(e) ("The suit authorized under subsection (a) of this section may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought.").

[70]

See *Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010); *Pub. Emps. v. Goldman Sachs*, 2012 WL 336146, at *4.

[71]

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (HB), 2003 WL 21672085, at *3 (S.D.N.Y. July 16, 2003). The Court notes that while the commonality, typicality, and adequacy of representation requirements under Rule 23(a) address overlapping concerns, the adequacy of representation requirement differs in that it "also raises concerns about the competency of class counsel and conflicts of interest." *Falcon*, 457 U.S. at 157-58 n.13. In the present case, the Court is unconvinced by defendants' additional arguments that Wyoming is an inadequate representative. *See NJ Carpenters*, 272 F.R.D. at 164-65 (finding claims as to possible differences between class members on legal approach and settlement strategies to be "largely conjectural," and therefore not a basis for denying class

III.     *Rule 23(b)(3) Requirements*

A.     *Predominance*

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."[72]

While predominance requires a more rigorous showing than does commonality or typicality, it "does not require a plaintiff to show that there are no individual issues."[73] Rather, "[i]n determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class."[74] Where issues of liability are "common to the class, common questions are held to predominate over individual questions."[75] In determining whether the predominance requirement has been met, courts must consider both

---

certification); *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 126-27 (S.D.N.Y. 2001) ("[T]he fact that conflicts among class members may arise at the settlement or damage stage of the litigation does not require the denial of class certification.").

[72]

*UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010); *see also Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

[73]

*NYSE Specialists*, 260 F.R.D. at 75; *see also Dura-Bilt*, 89 F.R.D. at 99 ("[I]ndividual issues will likely arise in this case as in all class action cases," so to permit "various secondary issues of plaintiffs' claim[s] to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws").

[74]

*In Re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999).

[75]

*Dura-Bilt*, 89 F.R.D. at 93.

affirmative claims and potential defenses.[76]

### 1.   *Relevant Legal Standards*

To bring a successful claim under Section 11 of the Securities Act, a plaintiff must

prove that:

> "(1) she purchased a registered security, either directly from the issuer or in the
> aftermarket following the offering; (2) the defendant participated in the offering in
> a manner sufficient to give rise to liability under section 11; and (3) the registration
> statement 'contained an untrue statement of a material fact or omitted to state a
> material fact required to be stated therein or necessary to make the statements therein
> not misleading.'"[77]

The elements of a Section 12 claim are that:

> "(1) the defendant is a 'statutory seller'; (2) the sale was effectuated 'by means of a
> prospectus or oral communication'; and (3) the prospectus or oral communication
> 'include[s] an untrue statement of a material fact or omit[s] to state a material fact
> necessary in order to make the statements, in the light of the circumstances under
> which they were made, not misleading.'"[78]

Section 12 therefore offers parties a means of recovery against any "statutory seller" whereas Section

11 is available against "offering participants."[79]   Liability under both provisions is limited in scope,

---

[76]

      *See, e.g., Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010) ("It is . . . well established that courts must consider potential defenses in assessing the predominance requirement.").

[77]

      *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010) (quoting 15 U.S.C. § 77k(a)).

[78]

      *Id.* at 358-59 (quoting 15 U.S.C. § 77*l*(a)(2)).

[79]

      *Id.* at 359.

but strict where applicable.[80]

Section 15 liability is derivative of liability under Section 11 and/or Section 12(a)(2).[81]  Where a plaintiff does not have a viable Section 11 or Section 12 claim, a Section 15 claim must fail as well.

Defendants facing Securities Act claims have several available defenses:

- A Section 11 or 12(a)(2) claim will not succeed where a defendant shows that "the plaintiff knew of the untruth or omission at the time or his or her acquisition of the security."[82]  Defendants similarly may avoid liability where they prove that a plaintiff had actual or inquiry notice of the materially misleading statements or omissions more than a year before its claims were filed.[83]

- Defendants may show also that a Section 11 claim against an underwriter was

---

[80]

See *Herman & MacLean v. Huddleson*, 459 U.S. 375, 381-82 (1983); *In re Morgan Stanley*, 592 F.3d at 359-60 ("[P]laintiffs bringing claims under sections 11 and 12(a)(2) need not allege scienter, reliance, or loss causation." (citing *Rombach*, 355 F.3d at 169 n.4)).

[81]

Section 15 states: "Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under Sections 77k [Section 11] or 77l [Section 12] of this title, shall also be liable jointly and severally with and to the same extent as such controlled person . . . ."  15 U.S.C. § 77o(a).  Accordingly, the Court does not address Section 15's requirements beyond its discussion of the Section 11 and Section 12(a)(2) claims.

[82]

See *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 n.1 (2d Cir. 2007) ("*In re IPO II*") (explaining that generally Section 11 liability "is absolute" but if a defendant can show that "the plaintiff knew of the untruth or omission at the time of his or her acquisition of the security" it may avoid liability) (internal citations omitted).

[83]

See *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 349-50 (2d Cir. 1993).

brought by a plaintiff who "acquired the security after the issuer ha[d] made generally available to its security holders an earning statement covering a period of at least 12 months beginning after the effective date of the registration statement."[84]   Such a showing then requires the plaintiff to demonstrate reliance on the material misstatement or omission alleged, which otherwise would be unnecessary.[85]

•       Underwriter defendants may avoid Section 11 and Section 12(a)(2) liability as well by demonstrating that they conducted due diligence on the offerings that they underwrote and believed based on reasonable grounds that the statements alleged to be false were not misleading and that there were no material omissions.[86]

•       Finally, a Securities Act defendant may avoid liability by showing that the loss of a security's value was due to something other than the alleged misrepresentation or omission.[87]

---

[84]

15 U.S.C. § 77k(a)(5).

[85]

See In re WorldCom, 219 F.R.D. at 288-89 (noting that where such an earning statement exists, "the right of recovery under this subsection shall be conditioned on proof that such person acquired the securities relying on such untrue statement in the registration statement or relying upon the registration statement and not knowing of such omission, but such reliance may be established without proof of the reading of the registration statement by such person" (quoting 15 U.S.C. § 77k(a)(5))).

[86]

See 15 U.S.C. §§ 77k(b); 77l(a)(2).

[87]

See 15 U.S.C. § 77k(e) ("[I]f the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the

### 2.    The Present Case

Wyoming asserts that predominance may be found here because the SACC alleges "violations of Section 11 and Section 12(a)(2) of the Securities Act" and that "to prove [these] claims, Lead Plaintiffs and the Class must prove that [d]efendants made untrue statements or omissions that were material.  These issues predominate in this case and can be demonstrated on a class-wide basis."[88]

Defendants' primary arguments that predominance has not been met here are that there are individual issues regarding (1) investor knowledge, (2) inquiry or actual notice by certain plaintiffs that would implicate the statute of limitations, and (3) investor reliance stemming from the issuance of certain trustee reports.  They argue also that individual issues regarding liability and damages for prospective class members who purchased the offerings at different times predominate.[89]

Defendants here, as in *Tsereteli v. Residential Asset Securitization Trust 2008-A8,*[90] focus their arguments on the reasoning of *New Jersey Carpenters Health Fund v. Residential*

---

statements therein not misleading, such portion of or all such damages shall not be recoverable.").  The burden of demonstrating this is on the defendant, as the "risk of uncertainty" in such instances is placed on the defendant, not on the plaintiff.  *See Akerman v. Oryx Comm'cns Inc.*, 810 F.2d 336, 341 (2d Cir. 1987).  Under Section 12(a)(2), a defendant may assert a similar affirmative defense when "the person who offered or sold such security proves that any portion or all of the amount recoverable under subsection (a)(2) represents other than the depreciation in value of the subject security resulting from such part of the prospectus or oral communications, with respect to which liability of that person is asserted."  15 U.S.C. § 77*l*(b).

[88]

DI 279, at 25-26.

[89]

DI 294, at 12-26. This last argument is broken up into several components, including asserted differences demonstrating the requisite falsity, materiality, due diligence, causation, and damages.  Each is addressed in turn below.

[90]

*See Tsereteli v. Residential Asset Securitization Trust 2008-A8,* No. 08 Civ. 10637 (LAK), DI 100 (granting class certification in related MBS Securities Act class action).

*Capital, LLC*,[91] which denied certification of two classes in related MBS Securities Act cases based in large part on the plaintiffs' failure to demonstrate that the predominance requirement had been met.  The court there held that inferences of disparities in knowledge within the two proposed classes sufficed to defeat predominance.[92]  Defendants' reliance on *New Jersey Carpenters*, however, is not persuasive.

### i.  *Knowledge and Notice*

Defendants' first arguments center on assertions that (1) certain class members had individual knowledge of the defendants' alleged misstatements and omissions at the time they purchased their Certificates, and (2) there likely are individualized statute of limitations issues arising from actual or inquiry notice available at some time after class members purchased their respective Certificates.[93]  They state that "[p]laintiffs and their expert are conspicuously silent on the issue of investor knowledge."[94]

Defendants  ignore the fact that knowledge is an affirmative defense, not a required element of a Securities Act claim.  In order to defeat predominance on this basis, defendants must provide  evidence  that  certain  class  members  had  differing  levels  of  knowledge  regarding  the

---

91

       272 F.R.D. 160 (S.D.N.Y. 2011), *aff'd*, 2012 WL 1481519 (2d Cir. Apr. 30, 2012).

92

       *Id.* at 168-71.

93

       DI 294, at 13-19.  Both Sections 11 and 12(a)(2) of the Securities Act are subject to a one-year statute of limitations, beginning when the plaintiff discovers "the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m.

94

       DI 294, at 13, 18.

misleading nature of the statements or omissions when they invested sufficient to outweigh common issues.[95]

Defendants argue that Wyoming and other prospective class members likely had knowledge or notice of the alleged materially misleading nature of the Offering Documents.  They rely first on Wyoming's categorization of the class as consisting of many "sophisticated and/or institutional investors."[96]  They contend also that some prospective class members had the benefit of or themselves were investment advisors,[97] that some investigated the general  "degradation of underwriting standards,"[98] and that certain of them even predicted as early as 2005  that the housing market bubble would burst.[99]  They claim as well that certain prospective class members – particularly Western Asset Management Company ("WAMCO") and Pacific Investment

---

[95]

See *Tsereteli*, No. 08 Civ. 10637 (LAK), DI 100, at 25 (indicating allegations of knowledge or notice appropriately defeat predominance where a district court finds "specific statements by certain class members . . . demonstrating specific individual knowledge of the underlying loans and underwriting guidelines set forth in the relevant offering documents"); *Pub. Emps. v. Goldman Sachs*, 280 F.R.D. at 139 ("[I]n those cases where common issues failed to predominate because of individual investor knowledge, certain putative class members either participated in or had knowledge of the alleged conduct . . . . I am not persuaded that the potential varying degrees of investor knowledge here will create issues subject to individual proof sufficient to overwhelm common issues."); *Pub Emps. v. Merrill*, 277 F.R.D. at 117-18 (finding predominance is satisfied where, *inter alia*, defendants had failed to identify any evidence that plaintiffs or their money managers "knew of false statements in the Offering documents"); *NJ Carpenters*, 272 F.R.D. at 168-69 (finding predominance is not satisfied where, among other considerations, "[d]efendants have mustered a good deal of documentary evidence imputing knowledge to [Plaintiff's investment advisors]").

[96]

DI 279, at 5; DI 294, at 13, 15; Serio Decl. [DI 289], Ex. B (identifying 28 of 714 prospective class members as "sophisticated").

[97]

DI 294, at 14.

[98]

Serio Decl., Ex. DD, at 249-50.

[99]

*Id.*, Ex. B36.

Management Company, LLC ("PIMCO") – obtained information from IndyMac Bank about such issues as its loan underwriting guidelines.[100]

Investor sophistication does not alone defeat a finding of predominance in a class action.[101] Further, while demonstrating that certain class members are sophisticated investors may indicate that these class members were familiar with the MBS market and even understood that there were varying standards for and exceptions to underwriting guidelines used in the industry generally and by IndyMac Bank in particular, it does not establish that any prospective class member likely knew or had notice that the Offering Documents contained misstatements or omissions about IndyMac Bank's adherence to underwriting standards for the Certificates at issue in this case. Rather, the record indicates only that certain parties may have understood that there were problems with the declining quality of investments and with underwriting guidelines in the MBS sector as a whole.

Defendants point also to news stories and complaints filed in other courts, some of which discussed MBS and the housing market generally and some IndyMac Bank specifically.[102] They allege that these documents likely gave class members knowledge or notice of the allegedly misleading statements and omissions in the Offering Documents. But this does not defeat a finding

---

[100]

See *Id.*, Ex. W, ¶ 3; *Id.*, Ex. Y, at 40:11-13, 41:4-10; Olinski Decl. [DI 293], Ex. A, ¶ 3.

[101]

See *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (Rule 23(b)(3) "does not exclude from certification cases in which individual damages run high" (quotations omitted)); *Weiss v. Blech*, 95 Civ. 6422, 1997 WL 458678, at *4 (S.D.N.Y. Aug. 11, 1997) ("[S]ophistication in general says nothing about [plaintiff's] actual knowledge.").

[102]

See Serio Decl., Exs. FF-II (articles); *Id.*, Exs. KK, LL, PP, QQ (cases).

of predominance either.[103]   The only news articles cited that mention IndyMac Bank do not discuss the Certificates, the Offering Documents, or any of the facts that are the bases of the SACC.  The same is true of the lawsuits cited, which are of two varieties.  The first group was brought against certain prospective class members in this case.[104]   Those lawsuits indicate, at best, that a few prospective class members previously were alleged to have disregarded their *own* underwriting guidelines.  The second variety is a lawsuit filed in March 2007 against IndyMac Bancorp, Inc.[105] that alleged, among other things, that IndyMac Bank had "loosened its underwriting guidelines."[106] But that complaint made claims under the Securities Exchange Act of 1934, and did not claim that IndyMac Bank had made material misstatements about its adherence to its underwriting guidelines. Nor did it refer to the Certificates or Offering Documents at issue in this case.   In any event, these lawsuits all were publically available and therefore raise issues – if any – principally of knowledge, actual or constructive, subject to generalized proof.

       The record before this Court therefore differs from that in *New Jersey Carpenters*, where the district court identified what it felt were specific statements by certain class members demonstrating individual knowledge of the structure of the underlying loans and certain underwriting

---

[103]

      *See In re NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 285 (S.D.N.Y. 2009) ("To trigger the duty of inquiry, the . . . warnings must 'relate directly' to the misrepresentations and omissions on which the plaintiffs base their claims . . . .").

[104]

      Serio Decl., Exs. PP, QQ.

[105]

      IndyMac Bancorp, Inc. was the holding company for IndyMac Bank.

[106]

      Serio Decl., Ex. LL, ¶ 39 (Amended complaint in *Tripp v. IndyMac*, No. 07 Civ. 1635 (C.D. Cal.)).

26

guidelines set forth in relevant offering documents.[107]  Moreover, as this Court already has noted, while the Second Circuit affirmed the denial of class certification in *New Jersey Carpenters*, it pointed out that "another inference could have been drawn" in that case but that the Circuit was not "allowed to second-guess the trial court's choice between permissible competing inferences."[108]

The Court finds in this case that the record before it does not contain enough evidence that any prospective class member or members likely knew or had notice of the alleged misstatements or omissions in the Offering Documents.[109]

### ii.    Reliance

While Section 11 plaintiffs generally are presumed to have relied on allegedly false

---

[107]

    *NJ Carpenters*, 272 F.R.D. at 169-70 (finding that certain class members "were extensively involved in the structuring of the [offerings at issue], including in the review and selection of the loans that backed the certificates").

[108]

    *N.J. Carpenters Health Fund v. RALI Series 2006-Q01 Trust*, Nos. 11 Civ. 1683 & 11 Civ. 1684, 2012 WL 1481519, at *3 (2d Cir. Apr. 30, 2012) (quoting *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009)).

[109]

    The defendants in *Pub. Emps. v. Goldman Sachs,* No. 09 Civ. 1110 (HB) have appealed the decision to certify the class in that case on what those defendants contend was a record similar to that in *NJ Carpenters*. *See Pub. Emps.' Ret. Sys. v. Goldman Sachs Group, Inc.*, No. 12-0614, DI 71 (2d Cir. filed June 13, 2012) (granting leave to appeal).  While that case appears to be heading towards settlement, *see Pub. Emps v. Goldman Sachs*, No. 09 Civ. 1110 (HB), DI 139, the Court is mindful that there is some ambiguity in the law regarding the standard for determining whether the predominance requirement has been met in a Securities Act class action due to individualized knowledge defenses.  The defendants in *Goldman Sachs* argue that a finding of predominance can be defeated where defendants show that it is "likely" that certain class members had knowledge.  They argue that the district court has erred in requiring them to demonstrate that there in fact were certain plaintiffs who had knowledge.  This Court declines to reach this issue, as it is immaterial to the outcome of this motion. Under either standard, the Court is convinced that defendants in this case have not demonstrated adequately that any asserted knowledge or notice defense is sufficient to defeat a finding of predominance.

and misleading statements in offering documents, this presumption does not exist where the plaintiff "acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least 12 months beginning after the effective date of the registration statement."[110] Defendants argue that the class "includes investors who purchased certificates in 2008 and 2009, well after the initial offerings of the certificates."[111]  Thus, they contend, "investors who purchased more than a year after the initial offerings" each will be required to show that they relied on certain trustee reports that were issued to accompany the offerings.

As several courts already have held, the "factual premise of Defendant's argument is flawed."[112]  Only reports on Forms 10-K, 10-Q, 8-K, 20-F, 40-F, and 6-K, and annual reports made pursuant to Rule 14a-3 of the Exchange Act, are earning statements under the statute.[113] Accordingly, defendants have not shown that any class member is not entitled to the presumption of reliance.

### iii.    Damages and Liability

Defendants argue also that individual issues predominate because the various Certificates were issued pursuant to different Offering Documents and underwriting guidelines, resulting in individualized issues of damages and liability for different class members.  These

---

[110]

15 U.S.C. § 77k(a).

[111]

DI 294, at 19.

[112]

*Pub. Emps. v. Merrill*, 277 F.R.D. at 114-15; *see also In Re WorldCom*, 219 F.R.D. at 293.

[113]

*See* 17 C.F.R. § 230.258(a).

arguments are addressed in turn.

### a.    *Falsity*

Defendants first argue that the various offerings were backed by different loan groups and that "deviations from underwriting standards may have occurred with respect to loans in some loan groups, but not others."[114]  Further, they assert that the Certificates each were originated under "different loan documentation programs," have performed differently, were subject to differing underwriting guidelines, and that each Certificate therefore will require individual consideration to determine if the pertinent offering documents contained materially misleading statements and omissions.[115]  The SACC, however, alleges that the disclosures at issue for the offerings are "uniform," and have impacted all of the offerings similarly.[116]  Defendants have pointed to no substantial differences among the underwriting guidelines that applied to each group of loans, alleging only that the question of whether IndyMac Bank deviated from those guidelines "may" have a different answer for some loan groups than for others.[117]  Defendants' own expert, moreover, stated that he "presumed" that the underwriting guidelines would be the same across different loans and

---

[114]    DI 294, at 20.  The parties agree that each of the offerings in question was backed by a single loan pool.  *See* DI 300, at 2; Serio Decl., Ex. A, Report of Walter N. Torous, Ph.D. ("Torous Rep.") ¶ 31.

[115]    DI 294, at 20-22.

[116]    DI 300, at 3; SACC ¶¶ 213-17.

[117]    DI 294, at 20.  *See also* Torous Rep. ¶¶ 87, 88 (noting generally that "[t]he underwriting guidelines [for different kinds of mortgage loans] are likely to be different" but not discussing the substantive differences in underwriting standards for the Certificates in this case).

Case 1:09-cv-04583-LAK   Document 367   Filed 08/17/12   Page 29 of 35

offerings.[118]  Wyoming, on the other hand, has provided evidence that the allegedly misleading

statements in the Offering Documents about the underwriting standards were substantially similar.[119]

It asserts also that the underwriting standards themselves were the similar across offerings.[120]  Thus,

to the extent plaintiffs are able to show that the statements or omissions regarding IndyMac Bank's

adherence it its underwriting standards were false, the record indicates that this issue will be one

subject to generalized proof.[121]

    Courts in this and other districts have found that such substantial similarity of the

allegedly misleading statements in Offering Documents is sufficient for class certification, even

where class members purchased different offerings at different times.[122]  Issues related to falsity

---

[118]

  Levallee Decl., Ex. 1, Transcript of deposition of Walter A Torous, Ph.D., at 102:16-17 ("I presume that [the underwriting guidelines for loans at issue in this case] stayed the same, but I'm not sure.").

[119]

  *See* DI 300, at 1-2 (spelling out similarities as to alleged misstatements and omissions in Offering Documents for each offering); Egan Decl., Exs. C, D (chart indicating similarity of alleged misstatements in different Offering Documents); *see also* SACC ¶¶ 112-120 (alleging the same).

[120]

  DI 300, at 2 ("[T]he guidelines for how [the] loans would be underwritten was the same."); SACC ¶ 120 (stating that all allegedly "untrue statements" in the SACC were false because IndyMac Bank was "not following its stated underwriting guidelines with respect to its origination and acquisition of mortgage loans").

[121]

  *See* Feinstein Rep. ¶¶ 45, 50, 52 (finding that "the quality of the underwriting process impacts expected cash flow and in turn the value of [all] the securities"); Feinstein Reb. ¶ 41 (indicating that certain of the offerings at issue in this case were cross-collateralized, so that "the performance or impairment of a particular loan may affect the performance or value of the MBS certificates associated with different [loan] groups"); Egan Decl., Exs. C, D (quoting alleged misstatements in all offering documents, and indicating their similarity); DI 300, at 4 (identifying several sources, such as internal IndyMac reports and statistical compilations, that Wyoming asserts will allow it generally to demonstrate falsity at trial).

[122]

  *See, e.g., Pub. Emps. v. Goldman Sachs*, 2011 WL 135821, at * 11 (certifying class of purchasers of three offerings); *Pub. Emps. v. Merrill*, 277 F.R.D. at 113-14 (certifying class

therefore do not defeat a finding of predominance in this case.

### b.    Materiality

Defendants next argue that there are individualized issues of materiality sufficient to defeat predominance.  These arguments overlook the fact that materiality in a case like this is determined on an objective rather than a subjective basis.  It is established where "the defendants' representations, taken together and in context, would have misled a reasonable investor."[123]  "[W]hat a 'reasonable person' would have known, and when, can be proven on a class-wide basis."[124]  Whether a misstatement or omission was material therefore presents a common rather than an individual issue.[125]

### c.    Due Diligence

Defendants argue that there "were different underwriters for each of the 10 offerings,"

---

of purchasers of eighteen offerings even where there were "some statements that [we]re unique to [a] particular offering" in its offering documents, because "it is the substantially similar statements common to each" set of offering documents "that are the clear focus of the Amended Complaint"); *In re Countrywide Fin. Corp. Sec. Litig.*, No. 07 Civ. 5295 (MRP), 2009 WL 7322254, at *6 (C.D. Cal. Dec. 9, 2009) (certifying a class of multiple debt securities even where offerings "differed in size and timing").

[123]

*Rombach*, 355 F.3d at 172 n.7; *see also Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 717 (2d Cir. 2011) (finding materiality requires a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available" (citing *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000)).

[124]

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 233 n.10 (2d Cir. 2008).

[125]

*See Dura-Bilt*, 89 F.R.D. at 94 ("The question of materiality, rather than being an individual issue, is in fact a common issue.").

a fact giving rise to individualized questions regarding whether each "underwriter adequately performed due diligence on a given offering."[126]  Granted.  But these individualized questions are not as to matters that must be proved by each class member.  They are defenses that could prove unique to each underwriter.  Thus, as alleged, this defense would not require individual plaintiffs to make separate showings.  In any case, "questions of law or fact common to class members predominate"[127] regardless of any individualized proof with respect to underwriter due diligence defenses.

### d.    Loss Causation and Damages

Finally, defendants assert that both the affirmative defense of loss causation[128] and damages calculations for each class member further undermine plaintiffs' arguments that common questions predominate.[129]  Issues regarding individualized damages calculations generally, however, are "not sufficient to defeat class certification."[130]  Furthermore, at least one court has rejected the

---

[126]

DI 294, at 24.

[127]

FED. R. CIV. P. 23(b)(3).

[128]

Loss causation provides an affirmative defense to Section 11 and 12(a)(2) claims.  It requires a defendant to show that there is no causal link between the alleged misstatements and plaintiffs' loss.  *See, e.g.*, *In re Merrill Lynch*, 289 F. Supp. 2d at 437; *Akerman v. Oryx Commc'n, Inc.*, 609 F. Supp. 363, 368 (S.D.N.Y. 1984).

[129]

DI 294, at 24-26.

[130]

*Seijas*, 606 F.3d at 58.

argument that loss causation issues defeat predominance for class certification purposes.[131]

The Court is convinced that issues subject to generalized proof significantly predominate over any individualized considerations that are likely to arise in this case.


B.    *Superiority*

Finally, Wyoming must show that resolving this dispute as a class action would be superior to other means.

This consideration focuses on "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."[132]   "In general, securities suits . . . easily satisfy the superiority requirement of Rule 23."[133]

Requiring the prospective class members to bring individual actions, seek joinder, or else sit on their claims, would be inefficient.  Smaller investors who were not allowed to partake in

---

[131]

       *In re Metropolitan Sec. Litig.*, No. CV-04-25-FVS, 2008 WL 5102303, at *2 (E.D. Wa. Nov. 25, 2008) ("[D]efendants have not cited, and independent research has failed to uncover, a Section 11 case in which a court has ruled that the existence of a loss causation defense precludes certification under Rule 23(b)(3)."); *see also Akerman*, 810 F.2d at 341 (finding that loss causation presents a "heavy burden" for defendants).

[132]

       Fed. R. Civ. P. 23(b)(3).

[133]

       *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 187 (S.D.N.Y. 2008); *see also In re Blech Sec. Litig.*, 187 F.R.D. 97, 107-08 (S.D.N.Y. 1999).

a class action would be unlikely to have the resources or the incentive to bring individual suits.[134]
Further, the parties are aware of no investors pursuing individual claims regarding these same
offerings.[135]  Rather, of the investors that have come forward since the Court's June 21, 2010 opinion
on the motions to dismiss, all of them have sought to intervene, rather than file separate individual
actions.[136]

       Defendants argue that a class action would not be superior to individual suits because
certain of the prospective class members are "sophisticated and/or institutional investors."[137]  This
alone does not suffice to undermine a finding of superiority.[138]

       Defendants argue also that the superiority requirement has not been met because
"[p]laintiffs' proposed class includes foreign entities."[139]  While certain prospective class members
here are  foreign, a factor which can "counsel[] against a finding that the class action is superior to

---

[134]
    *See In re NASDAQ*, 172 F.R.D. at 130 ("although institutional investors, when compared to individual investors, may appear perfectly capable of seeking redress individually, smaller institutional investors may not be willing and able to hire counsel to battle against the collective resources of the nation's largest financial industry firms.")

[135]
    *See, e.g.*, DI 279 at 28.

[136]
    *See* DI 202; DI 219; DI 237.

[137]
    DI 294, at 27 (citing DI 276, at 5); *see also* Serio Decl., Ex. B (identifying 28 of 714 prospective class members as "sophisticated").

[138]
    *See Bd. of Tr. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 355 (S.D.N.Y. 2010) (finding that the existence of certain large claims "sufficient for individual suits is no bar to a class when the advantages of unitary adjudication exist to determine the defendant's liability").

[139]
    DI 294, at 28.

other forms of litigation," this is "not dispositive."[140]  Where, as here, defendants do not identify

which foreign entities' home countries would not give preclusive effects to this action, this argument

carries little weight.[141]

   The Court is persuaded that concentrating this dispute in a class action in a single

forum has clear benefits that outweigh any issues raised by defendants.  Allowing this matter to

proceed as a class action would avoid the "risk of inconsistent adjudication" and encourage "the fair

and efficient use of the judicial system."[142]  The Court can find no difficulties "likely to be

encountered in the management of this action as a class action apart from those inherent in any hard

fought battle where substantial sums are at issue and all active parties are represented by able

counsel."[143]

*   *   *

   The Court has considered defendants' additional arguments and finds them to be

without merit.

---

[140]
  *Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 116-17 (S.D.N.Y. 1998).

[141]
  *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 93-94 (S.D.N.Y. 2007) (excluding foreign class members because their home countries would not give preclusive effects to a class action).

[142]
  *In re Marsh & McLennan Cos. Inc. Sec. Litig.*, No. 04 Civ 8144, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009) (internal citations omitted).

[143]
  *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 134 (S.D.N.Y. 2001). Rule 23 provides management tools that a court may utilize as a class action proceeds.  *See generally Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993); s*ee also* FED. R. CIV. P. 23(c)(1)(C), 23(c)(5), 23(d)  (setting forth case management tools that allow the court to alter or amend the class certification, to certify subclasses, and to issue orders to help manage the case); *In re Flag*, 574 F.3d at 37 (identifying same management tools).

*Conclusion*

Wyoming's motion to certify the class, and for appointment as class representative and of class counsel [DI 276] is hereby granted, except that class certification is denied with respect to offering INDX 2006-AR11.   Moreover, the claims as to offering of the INDX 2006-AR11 Certificates are dismissed.

SO ORDERED.

Date:          August 17, 2012

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)