**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re INDYMAC MORTGAGE-BACKED SECURITIES LITIGATION | Master Docket No. 09-Civ. 04583 (LAK) ECF CASE |
| This Document Relates To: ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, APPROVAL OF FORM OF NOTICE AND SCHEDULING OF FINAL SETTLEMENT HEARING**

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.  INTRODUCTION .................................................................................................. 1

    A.  The Underwriter Defendant Settlement ....................................................... 1

    B.  Proposed Voluntary Dismissal Of IndyMac MBS, Inc. ............................. 3

II.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
SETTLEMENT PURPOSES UNDER RULES 23(a) AND (b)(3) ................................... 4

    A.  The Settlement Class Members Are Too Numerous to Be Joined ...................... 5

    B.  Common Questions of Law and Fact Exist ........................................................ 6

    C.  Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class ................. 8

    D.  Lead Plaintiffs and Lead Counsel Will Fairly and Adequately Protect the
Interests of the Settlement Class ....................................................................... 9

    E.  The Requirements of Rule 23(b)(3) Are Satisfied in this Action ......................... 12

        1.  Common Questions of Law and Fact Predominate .................................. 12

        2.  A Class Action Is Superior to Other Available Methods for the Fair
and Efficient Adjudication of this Controversy ....................................... 13

III.  THE COURT SHOULD APPROVE THE FORM AND METHOD OF THE
NOTICE TO THE SETTLEMENT CLASS ................................................................ 14

    A.  The Class Should Be Provided with Notice of This Proposed Settlement ........... 15

        1.  The Proposed Settlement Is the Result of Well Grounded, Good
Faith, Arm's-Length Negotiations ........................................................... 15

        2.  The Proposed Settlement Falls Within the Range of
Reasonableness and Merits Issuance of Notice and a Hearing on
Final Approval ......................................................................................... 16

        3.  The Form And Method of Notice Is Adequate ......................................... 17

IV.  NOTICE REGARDING THE PROPOSED VOLUNTARY DISMISSAL OF
INYMAC MBS IS APPROPRIATE ........................................................................ 20

V.  PROPOSED SCHEDULE OF EVENTS ................................................................... 20

VI.  CONCLUSION ..................................................................................................... 21

i

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

**Cases**

*Amchem Prods., Inc v. Windsor*,
  521 U.S. 59, 117 S. Ct. 2231 (1997)...............................................................................5, 14

*American Pipe & Construction Co. v. Utah*,
  414 U.S. 538, 94 S. Ct. 756 (1974),
  *cert. granted sub nom.*,
  *Pub. Emps.' Ret. Sys. of Miss. v. IndyMac MBS, Inc.*,
  134 S. Ct. 1515 (2014)............................................................................................. 14

*Aramburu v. Healthcare Fin. Servs.*,
  No. 02 CV 6535(ARR), 2005 WL 990995 (E.D.N.Y. Apr. 14, 2005)................................... 5

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*,
  *LLC*, 504 F.3d 229 (2d Cir. 2007) ........................................................................... 8

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ...................................................................................... 5

*Cross v. 21st Century Holding Co.*,
  No. 00 Civ. 4333(MBM), 2004 WL 307306 (S.D.N.Y. Feb. 18, 2004) ............................... 5

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ..................................................................................... 5

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
  89 F.R.D. 87 (S.D.N.Y. 1981) .................................................................................. 6

*Guenther v. Sedco, Inc.*,
  866 F. Supp. 786 (S.D.N.Y. 1994) ............................................................................ 14

*In re "Agent Orange" Prod. Liab. Litig.*,
  818 F.2d 145 (2d Cir. 1987) ..................................................................................... 6

*In re Am. Int'l Grp. Inc. Sec. Litig. (AIG)*,
  689 F.3d 229 (2d Cir. 2012) ................................................................................. 4, 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) ...................................................................................... 9

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................. 17

*In re Indep. Energy Holdings PLC Sec. Lit.*,
No. 00 Civ. 6689(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........................... 15

*In re IndyMac Mortgage-Backed Sec. Litig. (IndyMac)*,
286 F.R.D. 226 (S.D.N.Y. 2012) .................................................................... passim

*In re NASDAQ Market-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ..................................................................... 15, 17

*In re NYSE Specialists Sec. Litig.*,
260 F.R.D. 55 (S.D.N.Y. 2009) ........................................................................... 7

*In re Prudential Sec., Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................... 4, 15, 17

*In re SCOR Holding (Switz.) AG Litig.*,
537 F. Supp. 2d 556 (S.D.N.Y. 2008) ................................................................ 5, 8

*In re Veeco Instruments, Inc. Sec. Litig.*,
235 F.R.D. 220 (S.D.N.Y. 2006) ........................................................................... 8

*In re Vivendi Universal, S.A.*,
242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................................... 7

*In re WorldCom, Inc. Securities Litigation*,
219 F.R.D. 267 (S.D.N.Y. 2003) ........................................................................... 8

*Korn v. Franchard Corp.*,
456 F.2d 1206 (2d Cir. 1972) ........................................................................... 7

*N.J. Carpenters Fund v. DLJ Mortg. Capital, Inc.*,
No. 08 Civ. 5653 (PAC), 2011 WL 3874821 (S.D.N.Y. Aug. 16, 2011),
*amended in part on other grounds*,
2014 WL 1013835 (S.D.N.Y. Mar. 17, 2014) ........................................................... 7

*N.J. Carpenters Health Fund v. Residential Capital, LLC* (*N.J. Carpenters/ Residential*),
No. 08 Civ. 8781 (HB), 2013 WL 6839093 (S.D.N.Y. Dec. 27, 2013) ....................... 7, 9, 10

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1624 (2013)................................... 11

*Police & Fire Ret. Sys. of the City of Detroit v. IndyMac MBS, Inc.*,
721 F.3d 95 (2d Cir. 2013) .............................................................................. 14

*Public Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*
(*MissPERS/Merrill Lynch*),
277 F.R.D. 97 (S.D.N.Y. 2011)....................................................................... 7, 12

*Public Employees' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*
  *(MissPERS/Goldman Sachs),*
  280 F.R.D. 130 (S.D.N.Y. 2012) ................................................................ 7, 9, 14

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993) ............................................................................ 5, 8

*Toure v. Cent. Parking Sys. of N.Y.,*
  No. 05 Civ. 5237(WHP), 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) .............................. 8

*Tsereteli v. Residential Asset Securitization Trust 2006-A8,*
  283 F.R.D. 199 (S.D.N.Y. 2012) (Kaplan, J.) ................................................ 7, 8, 9

*UFCW Local 1776 v. Eli Lilly & Co.,*
  620 F.3d 121 (2d Cir. 2010) .................................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011) ............................................................................................ 6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (Wal-Mart/ Visa U.S.A.),*
  396 F.3d 96 (2d Cir. 2005) .................................................................................... 15

*Weinberger v. Kendrick,*
  698 F.2d 61 (2d Cir. 1982) .................................................................................... 18

**Statutes & Rules**

15 U.S.C. § 77z-1(a)(7) .................................................................................... 3, 19

Federal Rules of Civil Procedure
  Rule 15 ................................................................................................................ 14
  Rule 23(a) ................................................................................................ 4, 5, 12
  Rule 23(a)(1) ................................................................................................ 5, 6
  Rule 23(a)(2) ................................................................................................ 6, 7
  Rule 23(a)(3) ................................................................................................ 8, 9
  Rule 23(a)(4) .................................................................................................... 9
  Rule 23(b) ........................................................................................................ 12
  Rule 23(b)(3) .................................................................................... 4, 5, 12, 13
  Rule 23(c)(2)(B) ........................................................................................ 17, 19
  Rule 23(c)(3) .................................................................................................... 18
  Rule 23(e) .................................................................................................. 14, 20
  Rule 23(e)(1) .................................................................................... 14, 17, 19, 20
  Rule 23(g) .......................................................................................................... 9
  Rule 23(g)(1)(A) .............................................................................................. 11
  Rule 23(g)(1)(B) .............................................................................................. 11

Securities Act of 1933
    § 11 .................................................................................................................... 7
    § 12 .................................................................................................................... 7

## Other Authorities

*Manual for Complex Litigation, Third*, § 30.41 (1995) ................................................. 15

Lead Plaintiffs Wyoming Retirement System and Wyoming State Treasurer ("Lead Plaintiffs"), on behalf of themselves and the proposed Settlement Class (as hereinafter defined), respectfully submit this memorandum in support of their unopposed motion for: (i) certification of the proposed Settlement Class[1] for purposes of the Settlement[2] with the Underwriter Defendants;[3] (ii) approval of the form and manner of Notice to be sent to the proposed Settlement Class; and (iii) scheduling of a hearing (the "Settlement Hearing") on final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.

# I.    INTRODUCTION

## A.    The Underwriter Defendant Settlement

After approximately five years of hard fought litigation, extensive investigation and discovery, as well as arm's-length, in-person mediation sessions facilitated by the Honorable Edward A. Infante (Ret.), an experienced and highly respected mediator and former United States Chief Magistrate Judge for the Northern District of California, Lead Plaintiffs and the Settling Defendants have agreed to settle all claims against the Settling Defendants (the "Settlement" or "Underwriter Defendant Settlement") in this Action in exchange for a payment of $340 million.  The terms of the Settlement are as set forth in the Stipulation and its accompanying exhibits.  *See* Egan Decl. Ex. 1.

---

[1]  The "Settlement Class" or "Underwriter Defendant Settlement Class" is defined in paragraph 1(kk) of the Stipulation and Agreement of Settlement (the "Stipulation), dated September 8, 2014, a copy of which is attached as Exhibit 1 to the accompanying Declaration of Patrick T. Egan ("Egan Decl.").

[2]  Capitalized terms have the same meaning as ascribed in the accompanying Stipulation, unless otherwise noted.

[3]  The "Settling Defendants" or "Underwriter Defendants" are Credit Suisse Securities (USA) LLC; Deutsche Bank Securities Inc.; J.P. Morgan Securities LLC (f/k/a  J.P. Morgan Securities Inc.);  Morgan Stanley & Co., LLC (f/k/a Morgan Stanley & Co. Incorporated);  RBS Securities Inc. (f/k/a Greenwich Capital Markets, Inc.);  and UBS Securities LLC.

There is no question that this action has been thoroughly litigated.  As described below, by the time the Settlement was reached, Lead Counsel had engaged in approximately five years of vigorously contested litigation which included: (1) exhaustive briefing and arguing of motions to dismiss; (2) conducting discovery related to class certification, briefing and arguing motions for class certification, which included exchanging expert reports, taking/defending depositions of Lead Plaintiffs, third parties and finance experts; (3) briefing and arguing motions for reconsideration; (4) briefing and arguing various discovery motions; (5) fully briefing a motion to expand the certified class; (6) extensive discovery related to the claims and underlying events and transactions alleged in the Second Amended Complaint, including searching, culling and reviewing over 14 million pages of documents, serving rounds of written discovery, deposing former employees of certain Settling Defendants and interviewing dozens of witnesses; and (7) extensive work with experts and consultants on valuation, sampling, due diligence, loan underwriting and damages.  As noted above, the parties reached the Settlement only after extensive negotiations, including two in-person mediation sessions – facilitated by Judge Infante.

To the best of Lead Plaintiffs' knowledge, the $340 settlement represents one of the largest MBS securities class action settlements to date.  Lead Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable and adequate, particularly given the numerous and substantial risks the Lead Plaintiffs faced in this litigation.  Although Lead Plaintiffs believe the claims they have asserted against the Settling Defendants are meritorious and Settling Defendants believe their defenses are meritorious, the parties both recognize the uncertainty and the risk attendant to any litigation – especially a complex class action such as this – and the difficulties, substantial expense and length of time necessary to prosecute the litigation through fact and expert discovery, a second class certification battle, summary judgment motions, trial,

post-trial motions and appeals.  Based upon these considerations and other relevant factors, Lead

Plaintiffs have agreed to settle the claims against the Settling Defendants on the terms and

conditions set forth in the Stipulation and respectfully submit that the proposed Settlement is in

the best interests of the Settlement Class and provides a meaningful recovery for those class

members now.

Specifically, Lead Plaintiffs' Motion seeks an order granting:

- Certification of a settlement class (the "Settlement Class") as defined in paragraph 1(kk) of the Stipulation.

- Appointment of Lead Plaintiffs and additional plaintiffs the General Retirement System of the City of Detroit ("GRS"), Iowa Public Employees' Retirement System, Los Angeles County Employees Retirement Association ("LACERA"), City of Philadelphia Board of Pensions and Retirement ("Philadelphia"), Police and Fire Retirement System of the City of Detroit ("DPFERS") and Public Employees' Retirement System of Mississippi ("Miss PERS") as Class Representatives of the Settlement Class, and Berman DeValerio as Class Counsel for the Settlement Class;

- Approval of the form, substance and the requirements of the proposed notice of settlement and summary notice, appended as Exhibits A-1 and A-2 to the [Proposed] Order Certifying Class for Settlement and Approving Notice to the Settlement Class of the Proposed Settlement with Underwriter Defendants (the "Notice Order") (attached as Exhibit A to the Stipulation) and the means and methods for disseminating notice, as comporting with due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 77z-1(a)(7).

- The scheduling of a Settlement Hearing at which final approval of the Settlement, Plan of Allocation and an award of attorneys' fees and reimbursement of Litigation Expenses to Lead Counsel may be considered.

**B.    Proposed Voluntary Dismissal Of IndyMac MBS, Inc.**

Separately, if this Court grants final approval to the Underwriter Defendant Settlement,

Lead Plaintiffs intend to voluntarily dismiss, without prejudice, the live claims against IndyMac

MBS, Inc. ("IndyMac MBS"), currently the sole remaining defendant.  The proposed voluntary

dismissal of IndyMac MBS is *not* part of the Underwriter Defendant Settlement.

Based on information obtained through discovery, including receipt of a sworn declaration from IndyMac MBS, IndyMac MBS has no ongoing business or income, little to no assets and no applicable insurance.  Lead Plaintiffs further believe that any judgment entered against IndyMac MBS would be uncollectible.  As such, Lead Plaintiffs intend to voluntarily dismiss IndyMac MBS from the Action without prejudice, contingent on final approval of the Underwriter Defendant Settlement.

Accordingly, Lead Plaintiffs request that Rule 23 notice be provided to the members of the Underwriter Defendant Settlement Class, as well as the Individual Defendant Settlement Class,[4] advising about this proposed dismissal.

## II.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES UNDER RULES 23(a) AND (b)(3)

Lead Plaintiffs request that the Court certify the Settlement Class under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure for settlement purposes.  The Settlement Class is set forth in Section I, *supra*.

The Second Circuit acknowledges the propriety of certifying a class solely for purposes of a class action settlement.  *See In re Am. Int'l Grp. Inc. Sec. Litig. (AIG)*, 689 F.3d 229, 238-39 (2d Cir. 2012).  Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re Prudential Sec., Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995).  "The law in the Second Circuit favors the liberal construction of Rule 23, … and courts may exercise broad discretion when they determine whether to certify a class."

---

[4]  The "Individual Defendant Settlement" means the settlement as defined in the July 31, 2012 Amended Stipulation and Agreement of Partial Settlement, ECF No. 365-1, which received final approval from this Court on December 18, 2012, ECF No. 410.

*Aramburu v. Healthcare Fin. Servs.*, No. 02 CV 6535(ARR), 2005 WL 990995, at *2 (E.D.N.Y. Apr. 14, 2005).[5]

In certifying the class in connection with the nine Certified Offerings, this Court has already found that class treatment is appropriate and the standards for Rule 23 have been met. *See In re IndyMac Mortgage-Backed Sec. Litig. (IndyMac)*, 286 F.R.D. 226 (S.D.N.Y. 2012). These findings were echoed in the Court's order approving notice of the Individual Defendant Settlement.  Order Certifying The Class for Purposes of Partial Settlement & Approving Notice to the Settlement Class ("2012 Notice Order"), Sept. 9, 2012, ECF No. 368.   Here, the proposed Settlement Class meets all the requirements of Rule 23, there is no likelihood of abuse of the class action device in this Settlement context, and the Settlement is fair, reasonable, and subject to the Court's approval.  As set forth below, certification is appropriate because the Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).

## A.      The Settlement Class Members Are Too Numerous to Be Joined

As required for class certification by Rule 23(a)(1), the members of the proposed class are so numerous that joinder of all its members would be "impracticable."  Impracticable does not mean impossible, and "[p]laintiffs are not obligated to prove the exact class size to satisfy numerosity."  *Cross v. 21st Century Holding Co.*, No. 00 Civ. 4333(MBM), 2004 WL 307306, at *1 (S.D.N.Y. Feb. 18, 2004) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Indeed, numerosity has been presumed at a level as low as 40 class members.  *See In re SCOR Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 570 (S.D.N.Y. 2008) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

---

[5] A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  The manageability concerns of Rule 23(b)(3), however, are not at issue.  *See Amchem Prods., Inc v. Windsor*, 521 U.S. 591, 593, 117 S. Ct. 2231, 2235 (1997) ("Whether trial would present intractable management problems, . . . is not a consideration when settlement-only certification is requested, …").

The Court has already found numerosity with respect to the nine (9) offerings previously certified (the "Certified Offerings"). *IndyMac*, 286 F.R.D. at 232 (noting class of over 700 potential members). The proposed Settlement Class, which consists of purchasers of securities from 50 public offerings of mortgage-backed securities totaling over $27 billion at issuance, will be well over 700 potential claim members. There are likely thousands of members, and joinder of all these individuals would be impracticable. Moreover, the Settling Defendants stipulated to numerosity of the expanded class. *See* Stip. & Order Regarding Lead Pls.' Anticipated Mot. to Amend Class Cert. Order, ¶ 1, May 9, 2013, ECF. No. 430. Therefore, Rule 23(a)(1) is satisfied.

### B.    Common Questions of Law and Fact Exist

As Rule 23(a)(2) requires, the claims of the members of the proposed Settlement Class involve numerous common questions of law and fact. This Court previously found that the commonality requirement was met with respect to the Certified Offerings. *See IndyMac*, 286 F.R.D. at 233-35.

To establish commonality, class members must have "suffered the same injury," and "[t]heir claims must depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation and internal quotation marks omitted). Class members' "common contention, . . . must be of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* at 2551. The existence of just a single common legal or factual question is sufficient to satisfy Rule 23(a)(2). *Id.* at 2556; *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987).[6] In securities fraud litigation, the

---

[6] As one court observed, "individual issues will likely arise in this as in all class action cases. But to allow various secondary issues of plaintiffs' claim to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981); *see also In re NYSE Specialists Sec. Litig.*,

"commonality requirement 'has been applied permissively.'" *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (citation omitted).

Here, Plaintiffs have asserted claims under Sections 11 and 12 of the Securities Act of 1933 against the Underwriter Defendants.  As with the Certified Offerings, Lead Plaintiffs' claims present many questions of law and fact that are common to all Settlement Class Members, including:  whether Defendants violated the Securities Act; whether the Registration Statements issued by Defendants to the investing public negligently omitted and/or misrepresented material facts about the underlying mortgage loans comprising the Offerings; the extent to which the members of the class have sustained damages (if any); and the proper measure of damages.

Courts in this District have routinely found that the above types of common questions satisfy Rule 23(a)(2).  *See N.J. Carpenters Health Fund v. Residential Capital, LLC* (*N.J. Carpenters/ Residential)*, No. 08 Civ. 8781 (HB), 2013 WL 6839093, at *2 (S.D.N.Y. Dec. 27, 2013) ("Defendants' compliance with underwriting guidelines and due diligence requirements and nondisclosure of adverse information, will 'generate common answers apt to drive the resolution of the litigation'") (citation omitted); *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 207 (S.D.N.Y. 2012) (Kaplan, J.) ("[T]he central issues in this case are common to the claims of all.").[7]  Rule 23(a)(2) is thus satisfied.

---

260 F.R.D. 55, 75 (S.D.N.Y. 2009) (stating that "predominance does not require a plaintiff to show that there are no individual issues").

[7]*See also Public Employees' Ret. Sys. of  Miss. v. Merrill Lynch & Co., Inc. (MissPERS/Merrill Lynch)*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011) ("courts in this Circuit have held that the Rule 23 commonality requirement is plainly satisfied [where] the alleged misrepresentations in the prospectus relate to all the investors, as the existence and materiality of such misrepresentations obviously present important common issues" (alterations in original) (quoting *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972)) (internal quotation marks omitted)); *Public Employees' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc. (MissPERS/Goldman Sachs)*, 280 F.R.D. 130, 134 (S.D.N.Y. 2012); *N.J. Carpenters Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2011 WL 3874821, at *2 (S.D.N.Y. Aug. 16, 2011), *amended in part on other grounds*, 2014 WL 1013835 (S.D.N.Y. Mar. 17, 2014).

### C.       Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class

As Rule 23(a)(3) requires, "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).  Lead Plaintiffs satisfy Rule 23(a)(3)'s typicality requirement because "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *See SCOR Holding*, 537 F. Supp. 2d at 571 (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007)). "Typicality [ ] does not require that the situations of the named representatives and the class members be identical." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (alteration in original) (citation and internal quotation marks omitted).  Rather, so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *In re WorldCom, Inc. Securities Litigation*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (citation and internal quotation marks omitted), "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims," *Robidoux*, 987 F.2d at 937.  *See also Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237(WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007).

As this Court has observed, the typicality requirement "is not demanding."  *Tsereteli*, 283 F.R.D. at 208 (citation and internal quotation marks omitted).  Plaintiffs need not show that the factual background of their claims is "identical to that of all class members"; rather, it suffices "that the disputed issue of law or fact occupy essentially the same degree of centrality to [the class representatives'] claim as to that of the other members."  *Id.*  Typicality "may be found in a securities class action based on something as simple as a common disregard of underwriting guidelines," so long as "plaintiffs assert . . . that defendants committed the same wrongful acts in

8

the same manner, against all members of the class." *Id.* (alteration in original) (citation and internal quotation marks omitted).

As with other Rule 23 requirements, the Court previously found that typicality was satisfied. *IndyMac*, 286 F.R.D. at 233-35.  The proposed additional offerings comprising the Settlement Class does not change the analysis or result. *See, e.g., N.J. Carpenters/ Residential*, 2013 WL 6839093, at *2.  The same rationale applies here as the same alleged course of conduct by the Settling Defendants allegedly caused the injuries to plaintiffs, and the members of the Settlement Class, and liability for this conduct is predicated on the same legal theories. *See also* Mem. of Law In Supp. of Lead Pls.' Mot. For Class Cert. & Appointment of Class Reps. & Class Counsel ("Initial Motion for Class Certification"), at 15-16, Dec. 10, 2010, ECF No. 279; Lead Pls.' Reply Mem. In Further Supp. of Their Mot. for Class Cert., at 16-17, Apr. 8, 2011, ECF No. 300.  Therefore, the Rule 23(a)(3) typicality requirement is satisfied.

> ### D. Lead Plaintiffs and Lead Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class

Rules 23(a)(4) and 23(g) are satisfied here because, as they require, (i) Lead Plaintiffs' interests are not antagonistic to those of other Settlement Class Members, and (ii) Lead Counsel are qualified, experienced, and eminently able to conduct this Action. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

As discussed above, Lead Plaintiffs purchased or otherwise acquired Certificates and allegedly suffered significant losses as a result of the same course of conduct that allegedly injured other members of the Settlement Class.  Therefore, Lead Plaintiffs' interests in demonstrating the Settling Defendants' liability and maximizing possible recovery are aligned with the interests of the absent class members. *See, e.g., MissPERS/Goldman Sachs*, 280 F.R.D. at 136 (rejecting defendants' argument that plaintiff could not adequately represent class

members "who purchased more senior and subordinate certificates," court explained, "despite the differences among tranches, the conflict that Defendants propose is not 'fundamental' because Plaintiff still has the incentive to negotiate a settlement for the highest amount of damages possible and any perverse incentives that may arise given the waterfall structure of the tranches are merely speculative at this stage").  As this Court has previously ruled, and events have shown, Lead Plaintiffs have no interest antagonistic to the interests of other members of the Settlement Class.

Additionally, Lead Plaintiffs are committed to vigorously prosecuting this action.  Lead Plaintiffs, whose close supervision and oversight of the litigation were detailed in the Initial Motion for Class Certification and in declarations provided by their representative,[8] have continued to advance Settlement Class Members' interests.  Among other things, since the Court appointed them as Class representatives under Rule 23, Lead Plaintiffs have actively overseen the litigation, obtained a settlement of claims against the Individual Defendants, vigilantly sought to expand the scope of the class to include investors in offerings not purchased by Lead Plaintiffs, including working with the proposed Intervenor Plaintiffs.  *See also N.J. Carpenters/ Residential*, 2013 WL 6839093, at *3 ("the inclusion of additional class representatives who made purchases in different offerings strengthens the adequacy of representation; thus, this requirement continues to be satisfied.").

---

[8]  *See* Initial Mot. for Class Cert. at 22-23; Decl. of Joseph B. Meyer in Supp. of Lead Pls.' Mot. for Class Cert., Dec. 10, 2010, ECF 277-6 (attached as Ex. F to Decl. of Patrick T. Egan In Supp. of Lead Pls.' Mot. For Class Cert. & Appointment of Class Reps. & Class Counsel ("Egan 2010 Decl."), Dec. 10, 2010, ECF 277); Decl of Thomas Williams in Supp. of Lead Pls.' Mot. for Class Cert., Dec. 10, 2010, ECF 277-7 (Ex. G to Egan 2010 Decl.).

Furthermore, the additional proposed Class representatives, who have significant experience in securities cases, likewise will promote Class members' interests.[9]   Indeed, these institutions – who moved, partially successfully, to intervene in the action in order to bring claims based on certain offerings back into the case after the Court dismissed those claims on standing grounds (before the Second Circuit's ruling in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1624 (2013)) – have participated actively in the litigation.

As for the adequacy of Class Counsel, a court must consider the following: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the type of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  A court "may [also] consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Here, the Court has previously appointed Lead Counsel to serve as representatives in its orders appointing Lead Plaintiffs and certifying the class.  Lead Counsel are highly experienced in litigating securities class actions and have (and continue to) fairly and adequately prosecute the claims of the Settlement Class.  *See* Egan Decl. Ex. 3 (Berman DeValerio's firm resume). Lead Counsel have further demonstrated their adequacy by the substantial work undertaken in prosecuting this action, including defeating defendants' motions to dismiss, certifying a class, seeking to expand the proposed class, pursuing extensive discovery, hiring and working with

---

[9]  *See* Decl. of Anthony D. Phillips In Supp. of Lead Pls.' Mot. to Expand the Certified Class, Aug. 30, 2013, Exs. 8-13, ECF Nos. 472-8 to 472-13 (attaching declaration from each of the additional class representatives).

experts in various areas to prove the Settlement Class's allegations and successfully reaching

very favorable settlements with the Individual Defendants and the Settling Defendants.

In view of these facts, Lead Plaintiffs and the proposed additional Class Representatives

should be appointed Class Representatives, and Lead Counsel should be appointed Settlement

Class Counsel.

### E.   The Requirements of Rule 23(b)(3) Are Satisfied in this Action

In addition to the four requirements of Rule 23(a), a certifiable class must also satisfy one

of the three subparts of Rule 23(b).  Lead Plaintiffs here seek class certification under Rule

23(b)(3), which establishes two requirements, commonly referred to as "predominance" and

"superiority," both of which are satisfied here.

### 1.   Common Questions of Law and Fact Predominate

Under Rule 23(b)(3), questions of law or fact common to the members of a class must

"predominate" over any questions affecting individual members.   Predominance exists "'if

resolution of some of the legal or factual questions that qualify each class member's case as a

genuine controversy can be achieved through generalized proof, and if these particular issues are

more substantial than the issues subject only to individualized proof.'"  *IndyMac*, 286 F.R.D. at

235-36 (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)).[10]  In

connection with Lead Plaintiffs' Initial Motion for Class Certification, this Court previously

---

[10] "While predominance requires a more rigorous showing than does commonality or typicality, it does not require a plaintiff to show that there are *no* individual issues." *Id.* at 236 (emphasis added) (citation and internal quotation marks omitted).  Indeed, "individual issues will likely arise . . . in all class action cases, and to allow various secondary issues of plaintiffs' claim[s] to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws." *MissPERS/Merrill Lynch*, 277 F.R.D. at 111 (alteration in original) (citation and internal quotation marks omitted).  In other words, the requirement that common issues predominate should not be read so narrowly as to undermine class certification where, as here, Settlement Class Members clearly will enjoy the benefits of efficiency, uniformity, and economies of scale Rule 23 aims to afford.  *See AIG*, 689 F.3d at 240 (predominance requirement reflects Rule 23's aim to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results") (alteration in original) (citation and internal quotation marks omitted).

rejected defendants' arguments that individual issues concerning knowledge and notice, reliance, damages and liability predominated and found that Lead Plaintiffs had satisfied the requirements for Rule 23(b)(3). *Id.* at 235-42.  The briefing on Lead Plaintiffs' Motion to Expand the Certified Class amply demonstrates that common questions of liability predominate and that proof of such will be common to the class.  *See* Mem. of Law in Supp. of Lead Pls.' Mot. to Expand the Certified Class, at 26-34, Aug. 30, 2013, ECF No. 471; Reply Mem. in Further Supp. of Lead Pls.' Mot. to Expand the Certified Class, at 1-18, Jan. 14, 2014, ECF No. 497 (explaining, *inter alia*, that the question of falsity gives rise only to common questions; damages do not give rise to individual issues that would predominate; and common questions predominate as to affirmative defenses).  Thus, the predominance requirement of Rule 23(b)(3) is satisfied.

### 2.     A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Controversy

This Court previously found that this case satisfied Rule 23(b)(3)'s superiority requirement – an element securities suits "easily satisfy."[11]  *IndyMac*, 286 F.R.D. at 242.  The certification of the additional Offerings comprising the Settlement Class will do nothing to change that determination.  The same considerations that persuaded the Court "that concentrating this dispute in a class action in a single forum has clear benefits that outweigh any issues raised by defendants" (*id.* at 242-43) render a class action the superior method to adjudicate Settlement Class Members' claims.

As noted above, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management

---

[11]  This consideration focuses on "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).

problems, . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620, 117 S. Ct. at

2248.  Additionally, individual actions may be time barred.  *See Police & Fire Ret. Sys. of the*

*City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) (holding that neither the class-

action tolling doctrine espoused in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94

S. Ct. 756 (1974), nor "relation back" under Fed. R. Civ. P. 15, can render claims timely where

the Securities Act's statute of repose has expired), *cert. granted sub nom., Pub. Emps.' Ret. Sys.*

*of Miss. v. IndyMac MBS, Inc.*, 134 S. Ct. 1515 (2014).  It is axiomatic that the "only means" for

resolving a dispute is the superior means.  *Guenther v. Sedco, Inc.*, 866 F. Supp. 786, 787-88

(S.D.N.Y. 1994).

Finally, given the size and geographical dispersion of the proposed Settlement Class and

the likelihood that many purchasers will have sustained comparatively small losses, the

circumstances here are precisely those for which a class action is appropriate.   It is also desirable

to concentrate the litigation here because the court is already "familiar with the history of this

case, having ruled on earlier motions and discovery disputes" and because the forum has

significant "familiarity . . . with securities law."  *MissPERS/Goldman Sachs*, 280 F.R.D. at 141.

## III.   THE COURT SHOULD APPROVE THE FORM AND METHOD OF THE NOTICE TO THE SETTLEMENT CLASS

Lead Plaintiffs also request that the Court approve the form and content of the proposed

Notice and Summary Notice.  (*See* Exhibits A-1 and A-2 to the proposed Notice Order).  Notice,

informing absent class members of the terms of a settlement and the opportunity to be heard at

the fairness hearing, is subject to court approval and, provided the court sees no reason to doubt

the fairness of a settlement and finds no obvious deficiencies such as preferential treatment for

class representatives or segments of the class, or excessive fees for counsel, the court should

direct Notice under Rule 23(e).  Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a

reasonable manner to all class members who would be bound by the proposal."); *Prudential Sec.*, 163 F.R.D. at 209 (citing *Manual for Complex Litigation*, *Third*, § 30.41, at 237 (1995)).

### A.    The Class Should Be Provided with Notice of This Proposed Settlement

There is a strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation "is encouraged by the courts and favored by public policy."  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (Wal-Mart/ Visa U.S.A.)*, 396 F.3d 96, 116-17 (2d Cir. 2005).   Notice to the class and an opportunity to be heard is justified where the settlement is "at least sufficiently fair, reasonable and adequate."  *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citation omitted).

There is no reason to doubt the fairness of the proposed Settlement because, as detailed below, (i) it was the result of well, grounded, good faith, arms-length negotiations; and (ii) it falls within the range of reasonable.  Accordingly, it merits issuance of the Notice and a Settlement Hearing.

### 1.    The Proposed Settlement Is the Result of Well Grounded, Good Faith, Arm's-Length Negotiations

A presumption of fairness applies to a proposed class settlement that is the result of arm's-length negotiations between counsel knowledgeable in complex class litigation.  *Wal-Mart/ Visa U.S.A.*, 396 F.3d at 116.  The Settlement is the product of just such rigorous arm's-length negotiations.  The Settling Parties negotiated in several sessions occurring over a 15 month period, including in multiple lengthy in-person and telephonic sessions with Judge Infante.  Egan Decl. ¶ 7.  "[T]hat the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable."  *In re Indep. Energy Holdings PLC Sec. Lit.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003).

Moreover, the Settlement was reached only after: (1) completion of Lead Plaintiffs' initial pre-filing factual investigation; (2) Lead Plaintiffs' analysis of IndyMac's public filings and public statements; (3) Lead Plaintiffs' review of news articles and analyst reports about IndyMac; (4) contacting/interviewing dozens of witnesses; (5) exhaustive briefing on defendants' motions to dismiss; (6) conducting discovery related to class certification, briefing and arguing motions for class certification, which included exchanging expert reports and taking/defending depositions of Lead Plaintiffs, third parties and experts; (7) briefing and arguing motions for reconsideration; (8) briefing and arguing various discovery motions; (9) fully briefing a motion to expand the certified class; (10) extensive discovery relating to the claims and underlying events and transactions alleged in the Complaint, including searching, culling and reviewing over 14 million pages of documents, serving rounds of written discovery, deposing certain former employees of the Settling Defendants and interviewing dozens of witnesses; and (11) extensive work with experts and consultants on valuation, sampling, due diligence, loan underwriting and damages.  Egan Decl. ¶ 8.  Thus, the Settlement was not achieved until the Settling Parties had sufficient familiarity with the issues in the case to evaluate its merits and agree on a settlement figure that was both acceptable to the Settling Defendants and reasonable, fair and adequate to the Settlement Class.

### 2. The Proposed Settlement Falls Within the Range of Reasonableness and Merits Issuance of Notice and a Hearing on Final Approval

The proposed $340 million Settlement is well within the range of reasonableness.  The total recovery represents the second largest securities class action MBS settlement to date.  This represents an excellent recovery particularly given the numerous and substantial risks faced in continuing this litigation against the Settling Defendants.  In particular, the Settling Defendants have raised a number of arguments and defenses (which they would raise at summary judgment

and trial) that there were no actionable misstatements and omissions.  Even assuming Lead

Plaintiffs could establish liability, the Settling Defendants maintained that any potential

investment losses suffered by Lead Plaintiffs and the Settlement Class were caused by external,

independent factors, and not caused by the Defendants' alleged conduct.  In the absence of a

Settlement, the Settling Parties would present factual and expert testimony on each of these

issues, and there is considerable risk that the Court or jury would resolve the inevitable "battle of

the experts" against Lead Plaintiffs and the Settlement Class.

Further, the terms embodied in the Stipulation are customary in nature.  In particular, the

Settlement recovers monies on behalf of the Settlement Class members and does not provide any

preferential treatment for Lead Plaintiffs.  *See NASDAQ*, 176 F.R.D. at 102; *Prudential*,

163 F.R.D. at 209 (notice of proposed settlement appropriate where "preliminary evaluation of

the proposed settlement does not disclose grounds to doubt its fairness or other obvious

deficiencies, such as unduly preferential treatment of class representatives . . .") (citation

omitted).

Additionally, the Settlement was negotiated under the direction and with the direct and

substantial involvement of the General Counsels of Lead Plaintiffs, both of whom are

sophisticated institutional investors familiar with acting as fiduciaries for others, as well as senior

representatives from the Wyoming Attorney General's office.  Egan Decl. ¶ 9.  This further

strengthens the presumption of fairness.  *See In re Global Crossing Sec. & ERISA Litig.*,

225 F.R.D. 436, 462 (S.D.N.Y. 2004) (participation of sophisticated institutional investor Lead

Plaintiffs in settlement process supports approval of settlement).

### 3.     The Form And Method of Notice Is Adequate

Consistent with Rules 23(c)(2)(B) and 23(e)(1), the proposed "long form" Notice

apprises Settlement Class Members of (a) the nature and pendency of the class action; (b) the

definition of the Settlement Class to be certified; (c) the class claims and issues; (d) the essential

terms of the Settlement; (e) the claims that will be released; and (f) information regarding Lead

Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses.

The Notice also advises that a Settlement Class Member may enter an appearance

through counsel if desired, notes that the Court will exclude from the Settlement Class any

member who requests exclusion (and sets forth the procedures and deadline for doing so), and

further describes (a) the binding effect of a judgment on the Settlement Class Members under

Rule 23(c)(3); (b) how to object to the proposed Settlement, Plan of Allocation, Lead Counsel's

application for attorneys' fees and request for reimbursement of Litigation Expenses; (c) the

date, time and location of the Settlement Hearing; (d) deadlines for submitting Proof of Claim

Forms and any objections; and (e) how to make a claim.  The proposed Notice therefore meets

the required reasonableness standard under Second Circuit law.  *Wal-Mart/ Visa U.S.A.*,

396 F.3d at 113-14 ("[T]he settlement notice must fairly apprise the prospective members of the

class of the terms of the proposed settlement and of the options that are open to them in

connection with the proceedings . . . ." (quoting *Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d

Cir. 1982) (internal quotation marks omitted))).

The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*:

(a) stating the amount of the Settlement on both an aggregate and average per unit basis;

(b) providing a brief statement explaining the reasons why the Settling Parties are proposing the

Settlement; (c) stating the amount of attorneys' fees and  maximum amount of Litigation

Expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and

(d) providing the names, addresses and telephone numbers of representatives of the Claims

Administrator and Lead Counsel who will be available to answer questions from Settlement

Class Members.  *See* 15 U.S.C. § 77z-1(a)(7).  These disclosures are thorough and should be approved.

Lead Plaintiffs also requests that the Court approve the appointment of Rust Consulting, Inc. ("Rust") as Claims Administrator.  Rust has extensive relevant experience, including experience administering MBS class action settlements, and is a nationally recognized notice and claims administration firm.  Rust has administered numerous class action settlements and its professionals have substantial experience in notice and claims administration.  Moreover, Rust is already familiar with the case.  The Court previously approved Rust's appointment as claims administrator for the Individual Defendant Settlement.  *See* 2012 Notice Order  ¶ 12.  In connection with this retention, Rust has already provided notices to potential class members, corresponded with brokers and other nominees about the names and addresses of potential class members, and established a website about the litigation, among other things.  *See* Aff. of Eric J. Miller Regarding Notice Administration, Nov. 13, 2012, ECF No. 387-2.  Accordingly, is best placed to complete the administration of the Individual Defendants Settlement and handle the administration of the companion Underwriter Defendant Settlement.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by . . . . a proposed settlement, voluntary dismissal, or compromise."  The proposed Notice plan readily meets these standards and is typical of Notice plans in similar actions.

IV.     **NOTICE REGARDING THE PROPOSED VOLUNTARY DISMISSAL OF INYMAC MBS IS APPROPRIATE**

Assuming the Settlement receives final approval, Lead Plaintiffs intend to voluntarily dismiss the live claims against IndyMac MBS, currently the sole remaining defendant, from the Action.  The proposed voluntary dismissal of IndyMac MBS is *not* part of the Settlement.

Based on information obtained through discovery, including receipt of a sworn declaration from IndyMac MBS, IndyMac MBS has no ongoing business or income, little to no assets and no applicable insurance.  Egan Decl. ¶ 10 and Ex. 5 (attaching sworn declaration).  Thus, Lead Plaintiffs believe that any judgment entered against IndyMac MBS would be uncollectible.  As such, Lead Plaintiffs expect to voluntarily dismiss IndyMac MBS from the Action without prejudice.

Rule 23(e) provides, in part, that that the claims of a certified class may be voluntarily dismissed "only with the court's approval."  Moreover, Rule 23(e)(1) provides that the court must "direct notice in a reasonable manner to all class members would be bound by" the proposed dismissal, and that class members be afforded the opportunity to object.

Here, the proposed long form Notice expressly provides Lead Plaintiffs' proposal to voluntarily dismiss IndyMac MBS, the basis for that proposal and affords members of the Underwriter Defendant Settlement Class an opportunity to object.  Accordingly, Lead Plaintiffs submit that the Notice complies with Rule 23(e) and should be provided to class members.

V.      **PROPOSED SCHEDULE OF EVENTS**

Lead Plaintiffs propose the following schedule for the Settlement-related events:[12]

---

[12] The only specific date that needs to be established is the date of the Settlement Hearing.  For efficiency and costs purposes, Lead Plaintiffs respectfully request that, where they overlap, the same notice, objection and hearing dates/deadlines apply for both the Individual Defendant Settlement and Underwriter Defendant Settlement.

| Event | Proposed Due Date |
|---|---|
| Deadline for mailing the Notice to Settlement Class ("Notice Date") | 10 business days after entry of the Notice Order |
| Deadline for publishing the Summary Notice | 5 calendar days after mailing of the Notice |
| Deadline for filing of papers in support of Final Approval of Settlement, Plan of Allocation and Lead Counsel's request for attorneys' fees and reimbursement Litigation Expenses | 35 calendar days prior to Settlement Hearing |
| Deadline for submitting exclusion requests or objections | 21 calendar days prior to Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | On or after December 11, 2014 |
| Deadline for submitting claim forms | 120 calendar days after Notice Date |

## VI.   CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that this Court:

(a) preliminarily certify the proposed Settlement Class for purposes of the Underwriter

Defendant Settlement; (b) appoint Lead Plaintiffs and proposed additional plaintiffs as Class

Representatives and Lead Counsel as Class Counsel, respectively; (c) approve the proposed form

of Notice and proposed form of the Summary Notice; (d) approve the proposed methods of

disseminating notice; (e) schedule a hearing on Lead Plaintiffs' motion for final approval of the

Settlement, the Plan of Allocation and Lead Counsel's motion for an award of attorneys' fees

and reimbursement of Litigation Expenses; and (f) grant such further relief as the Court deems

just and proper.

///

///

///

Dated:  September 11, 2014          Respectfully submitted,

**BERMAN DEVALERIO**


By:    */s/ Nicole Lavallee*
          Nicole Lavallee

Joseph J. Tabacco, Jr. (JJT-1994)
Nicole Lavallee (admitted *pro hac vice*)
One California Street Suite 900
San Francisco, California 94111
Telephone:    (415) 433-3200
Facsimile:    (415) 433-6382

Patrick T. Egan (PE-6812)
One Liberty Square
Boston, Massachusetts 02109
Telephone:    (617) 542-8300
Facsimile:    (617) 542-1194

*Lead Counsel for Lead Plaintiff and the Proposed*
*Settlement Class*