UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re INDYMAC MORTGAGE-BACKED SECURITIES LITIGATION | Master Docket No. 09-Civ. 04583 (LAK)<br>ECF CASE |
| This Document Relates To:<br>    ALL ACTIONS | |

**LEAD PLAINTIFFS' AND LEAD COUNSEL'S REPLY MEMORANDUM
OF LAW IN SUPPORT OF: (I) MOTION FOR FINAL APPROVAL OF THE
UNDERWRITER DEFENDANT SETTLEMENT AND THE PROPOSED PLAN OF
ALLOCATION, AND FINAL CERTIFICATION OF THE SETTLEMENT CLASS; AND
(II)  MOTION OF SETTLEMENT CLASS REPRESENTATIVES' COUNSEL FOR
<u>ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES</u>**

Lead Plaintiffs and their Counsel respectfully submit this reply memorandum in support of their (i) motion for final approval of the proposed settlement with the Underwriter Defendants; final certification of the Settlement Class; and final approval of the proposed Plan of Allocation (the "Approval Motion") (ECF No. 546); and (ii) Settlement Representatives' Counsel's ("Plaintiffs' Counsel") application for and award of attorneys' fees and reimbursement of expenses ("Fee and Expense Motion") (ECF No. 548).[1]

## PRELIMINARY STATEMENT

The deadlines for objections and exclusion requests were January 13, 2015. Lead Plaintiffs and Lead Counsel wish to advise the Court of the very positive reaction of the Settlement Class to the Settlement Approval Motion and Fee and Expense Motion. There have been no objections to the proposed Plan of Allocation or the request for attorneys' fees and expenses. There was only one "objection" to the Settlement, which effectively seeks clarification whether the Stipulation releases class action claims first alleged against Deutsche Bank National Trust Company ("DB Trustee"), an affiliate of defendant Deutsche Bank Securities, Inc. ("Deutsche Bank Securities"), in November 2014. *See* ECF No. 554, at 1. There is no objection as to any aspect of the Settlement involving the other five Settling Defendants.

Additionally, of the 7,038 notice packets that have been mailed to potential Settlement Class Members, only six (6) requests for exclusions have been received. *See* Supplemental Affidavit of Jason Rabe Regarding Notice Administration (the "Suppl. Aff."), at ¶¶ 4-6, 9, 10. Significantly, five of these six requests were made by entities that had filed their own lawsuits against the Settling Defendants. Because entities pursuing individual litigation against the Settling Defendants are excluded from the Settlement Class definition at Paragraph 1(kk) of the Stipulation, these five (5) requests were "belt and suspender" requests to preserve their pending

---

[1] All capitalized terms not otherwise defined herein have the same meaning as set forth in (i) the September 19, 2014 Amended Stipulation and Agreement of Settlement ("Stipulation") (ECF No. 539-1); (ii) Lead Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of The Underwriter Defendant Settlement and The Proposed Plan of Allocation, and Final Certification of The Settlement Class (the "Approval Brief") (ECF No. 547); or (iii) the Memorandum of Law in Support of Settlement Class Representatives' Counsel's Motion for Attorneys' Fees and Reimbursement of Expenses (the "Fee and Expense Brief") (ECF No. 549).

1

individual claims.  *See* Suppl. Aff. Ex B (Exclusions 1, 2 and 4 expressly acknowledge this).

Overall, this reaction is a clear testament to the fairness, adequacy and reasonableness of the Settlement and Plaintiffs' Counsel's request for fees and reimbursement of expenses.

## ARGUMENT

**I.   THE REACTION OF THE SETTLEMENT CLASS STRONGLY SUPPORTS APPROVAL OF THE SETTLEMENT, THE PLAN OF ALLOCATION, AND THE REQUESTED ATTORNEYS' FEES AND EXPENSE AWARDS**

As set forth in Lead Plaintiffs' opening papers, the Second Circuit considers the "reaction of the class" an important factor in connection with the approval of a proposed class action settlement.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  "[T]he favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in our *Grinnell* inquiry."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).  As the Second Circuit reasoned in *Wal-Mart Stores*, "'[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'"  *Id.* at 118 (citation omitted).  Such is the case here.

With the exception of a limited "objection" by Pacific Investment Management Company, LLC ("PIMCO"), seeking clarification of the release language as it applies to the DB Trustee ("PIMCO's Request for Clarification"), there have been no objections to the adequacy of Settlement or any of its terms.  Nor have there been any objections to the proposed Plan of Allocation governing the Underwriter Defendant Settlement and the Individual Defendant Settlement.  This unanimous approval provides additional strong support for the plan.  *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July  27, 2007) ("[c]ourts [should] consider the reaction of a class to a plan of allocation" and that, where no objections are received, "the Plan of Allocation should be approved").  Indeed, the composition of the Settlement Class substantially bolsters the weight to be afforded this factor, as it is comprised of sophisticated, large, mainly institutional investors

2

who have a substantial stake in this litigation.

Similarly, the fact that there have been minimal exclusion requests further indicates the Settlement Class' approval of the Settlement and supports the Court's final approval thereof. *See, e.g., In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2010 WL 5060697, at *2 (S.D.N.Y. Dec. 2, 2010) (noting the "extremely positive" reaction to the settlement where there were "only 105 requests for exclusion received, out of which 61 were timely and valid"), *aff'd*, 452 Fed. App'x 75 (2d Cir. 2012).[2]

Finally, the lack of objections to the Fee and Expense Motion, which seeks a far lower percentage fee than what has been awarded in similarly-situated MBS securities class action settlements to date, supports its reasonableness. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (noting that the lack of objections from members of the class is one of the most important factors in determining the reasonableness of a requested fee); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 594 (S.D.N.Y. 2008) ("That only one objection to the fee request was received is powerful evidence that the requested fee is fair and reasonable."). This is especially true where, as here, the Settlement Class is comprised of sophisticated parties. Plus, the requested fee and expense amounts are lower than the amounts in the notice. Mailing Aff. (ECF No. 551-2), Ex. A, at 3.

## II. PIMCO's REQUEST FOR CLARIFICATION SEEKS AN IMPERMISSIBLE ADVISORY OPINION AND SHOULD BE OVERRULED

PIMCO seeks "a Court order or stipulation of the parties to the Settlement confirming that the Settlement … does not compromise in any fashion the claims asserted" in a case filed over ten (10) weeks after the Settlement here was publicly announced and its terms including the release language publicly available: *BlackRock Balanced Capital Portfolio (FI), et al. v. Deutsche Bank National Trust Company, et al.*, No. 14-cv-09367-RMB (S.D.N.Y.)" ("Blackrock Federal Action"), filed November 24, 2014. *See* ECF No. 554, at 1. PIMCO expressly states

---

[2] *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (fact that less than 1% of class members opted out "strongly favor[ed] approval of the proposed settlements"); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010) (127 opt-outs and 24 objections was an "overwhelmingly positive reaction of the class").

3

that it "does not otherwise challenge any other term or aspect of the Settlement." *Id.*

There are two types of claims alleged in the Blackrock Federal Action – derivative and class claims. Lead Plaintiffs agree that the release language does not compromise in any fashion the ***derivative*** claims asserted in Blackrock Federal Action, which were the only claims first alleged by the plaintiffs in the Blackrock Federal Action in their initial action filed in June 2014 in New York state court (the "Blackrock State Derivative Action"). Further, Lead Plaintiffs believe that it is clear that the Settlement does not compromise any alternative ***direct class claims*** relating to the non-IndyMac MBS Trusts and those involving the IndyMac Certificates that were not underwritten by Deutsche Bank Securities. Of the 564 Trusts at issue in the Federal Action, only 30 Trusts overlap with the Offerings at issue in the pending Settlement. Of these, only 8 were underwritten by Deutsche Bank Securities. Thus, the only dispute relates to whether the Settlement releases PIMCO's purported class claims for 8 out of the 564 offerings at issue in the Blackrock Federal Action – claims which were alleged after the Settlement here was public and that are alleged "[a]lternatively, in the event that the Court does not permit this action to proceed as a derivative action." *See* ECF No. 554-2 ("Blackrock Fed. Compl."), at ¶¶ 580-585. As discussed below, it is not this Court's obligation or duty to render an advisory opinion regarding whether the Settlement releases these inchoate claims.

     **A.**    **THE DERIVATIVE CLAIMS BELONGING TO THE TRUSTS ARE NOT RELEASED**

In June 2014, Blackrock and others (the "Blackrock Plaintiffs") filed their State Derivative Action purporting to bring derivative claims on behalf of over 500 Trusts administered by the DB Trustee and a related entity, Deutsche Bank Trust Company Americas.[3] The MBS from these Trusts were issued by numerous banks, one of which was IndyMac. *See* ECF No. 554-4. This Blackrock State Derivative Action essentially alleged that, in its capacity as Trustee for hundreds of these Trusts, the DB Trustee breached its purported obligations to send notifications of alleged problems with mortgage loans held in those RMBS trusts, to protect

---

[3] PIMCO is not a plaintiff in either Blackrock actions.

the assets of the Trusts and to comply with its contractual and fiduciary duties to the Trusts. These duties included the duty to enforce certain representations and warranties ("R&Ws") made in the Pooling and Servicing Agreements ("PSAs") and related documents entered into between the Depositor (IndyMac MBS, Inc. here), the Seller and Servicer (IndyMac Bank, F.S.B. here) and the DB Trustee. *Id.* ¶¶ 1-19. The Blackrock State Derivative Action alleges common law claims for breach of contract under the PSAs, breach of fiduciary duty and negligence under New York state law and violations of the Trust Indenture Act of 1939 ("TIA") "on behalf of the trusts against [the DB Trustee]." *Id.* ¶¶ 454-507.

Lead Plaintiffs agree that the Stipulation does not release these derivative claims brought on behalf of the trusts for at least three reasons. ***First***, the Settlement does not release any claim an RMBS Trust may have against the Released Parties because the RMBS trusts are not members of the Settlement Class, as defined at ¶ 1(kk) of the Stipulation, as they hold mortgages, but do not acquire any Certificates. Only Settlement Class Members release claims. *See* Stipulation ¶¶ 1(kk), 4. *See also* Blackrock Fed. Compl. ¶¶ 2 ("sponsor creates a trust where the loans are deposited for the benefit of the certificateholders"), 243 ("securities themselves represent an interest in an issuing trust that holds the designated mortgage pools"). ***Second***, these claims do not relate to the "purchase, other acquisition, or sale of the Certificates." Paragraph 1(ee) of the Stipulation, which defines "Released Claims," expressly provides that release claims must ***both*** relate to allegations that arise from same facts ***and*** "relate to the purchase, other acquisition, or sale of the Certificates." ***Third***, Lead Plaintiffs believe that Blackrock's derivative claims do not arise out of the same factual predicate as the claims here. The derivative claims relate to a breach of the duties the DB Trustee owed to Trusts under the PSAs and trust law in carrying out its duties to manage the Trusts' assets.[4]

The crux of PIMCO's Request for Clarification stems from the fact that the Blackrock

---

[4] Given its restrictions to claims that both relate to the same underlying facts and to the purchase, acquisition or sale of Certificates, the "Released Claims" language is not overbroad and is well within the parameters prescribed by the Second Circuit for release – that is, it does not release claims beyond those claims arising out of an "identical factual predicate" and an alignment of interests. *See Wal-Mart*, 396 F.3d at 107.

5

Plaintiffs dismissed their Blackrock State Derivative Complaint on November 18, 2014 and filed the Blackrock Federal Action.  The Blackrock Federal Action realleges essentially the same derivative claims concerning "564 private-label RMBS Trusts" securitized between 2004 and 2008.  *See* Blackrock Fed. Compl. ¶¶1-579.  However, the Blackrock Plaintiffs also added five additional paragraphs in this 585 paragraph complaint to alternatively plead class allegations.  *See id.* ¶¶580-85.  Whether these claims, added in two months after the Settlement here was public, are released, raise different considerations.

**B.     THIS COURT NEED NOT - AND SHOULD NOT - DECIDE WHETHER THE RELEASE PRECLUDES THE BLACKROCK PLAINTIFFS FROM PURSUING THEIR INCHOATE, "ALTERNATIVE" CLASS ACTION ALLEGATIONS IN THEIR FEDERAL DERIVATIVE SUIT**

The six paragraph class action allegations follow the derivative counts and are not set forth in a separate count. Instead, they are tacked on at the end of the 585-paragraph federal complaint, and pled as an alternative to the derivative claims.  *See* Blackrock Fed. Compl. ¶¶ 580-85; *id.* ¶ 580 ("Alternatively, in the event the Court does not permit this action to proceed as a derivative action, Plaintiffs bring this action as a class action on behalf of themselves and a class consisting of all current owners of certificates in the Trusts (the 'Class') that have suffered damages as a result of Deutsche Bank's misconduct alleged herein.").

The Second Circuit held in *Wal-Mart*, 396 F.3d at 106, that the scope of a settlement release is limited by the "identical factual predicate" and "adequacy of representation" doctrines. The "identical factual predicate" doctrine provides that "class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct." *Id*. at 107 (citation omitted).  And "adequate representation of a particular claim is determined by the alignment of interests of class members, not proof of vigorous pursuit of that claim." *Id*. at 113.

PIMCO essentially seeks a ruling that, *if* the Blackrock derivative claims against the DB Trustee are dismissed and *if* the Blackrock Plaintiffs then seek to pursue their alternative class action allegations, the Release in this case will not bar a very limited subset of the Blackrock

6

Plaintiffs' class action claims (8 out of 564) because the claims alleged against Deutsche Bank Securities here do not set forth the identical factual predicate as the class allegations in the Blackrock Federal Complaint. This Court need not – and should not – decide this issue.

In *In re Worldcom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005), in considering the fairness of a proposed settlement, the court held that a class member's objection to the scope of the settlement release was "based on highly speculative concerns" and that "[w]hether the specific claims pleaded in [a separate lawsuit] are barred by the Release is not a determination that needs to be made at this time." Indeed, the court observed, "the determination whether a given claim is predicated on identical facts as the class action claims is inherently an individualized, fact-specific one," and therefore, "adding broad language specifying that only claims arising from an identical factual predicate are to be released would certainly not reduce litigation over the release of specific claims and may even be more likely to produce claims that Class Members were confused or misled." *Id.* at 342 n.36.

Accordingly, courts refuse to provide such advisory opinions. *See e.g., In re Duncan*, No. 02-46291, 2007 WL 2872411, at *1 n.1 (Bankr. E.D. Tex. Sep. 28, 2007) (rejecting objector's argument that settlement between bankruptcy trustee and debtor's wife was too broad because it would release all of trustee's claims, and stating: "This Court cannot and will not provide … an advisory opinion on the res judicata effect of the settlement agreement."); *In re Phila. Stock Exch., Inc.*, 945 A.2d 1123, 1147 (Del. 2008) (rejecting objectors' argument that settlement release could have preclusive effect in related federal litigation: "whether or not releasing the Demutualization claims will have preclusive effect in the related federal litigation is not an issue for this Court or the Court of Chancery to decide. As the United States Supreme Court observed in *Matsushita*, '[a] court conducting an action cannot predetermine the res judicata effect of the judgment; that effect can be tested only in a subsequent action[;]' … *i.e.*, by the federal courts where those actions are pending." (quoting *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 396 (1996) (alteration in original) (footnote omitted))).

Here, as in *Worldcom*, to issue such a ruling regarding the potential effect of the Release

7

on Blackrock's inchoate class action allegations would be highly speculative and would constitute an impermissible advisory opinion because the claims are both premature and speculative. Not only are these claims pled in the alternative, it is unclear whether the DB Trustee would even invoke the releasing language in an affirmative defense as to the class claims.[5] Moreover, Lead Plaintiffs submit that the record must be further developed in the Blackrock Federal Action to determine the nature and factual predicate for the class claims. The Blackrock Federal Complaint does not adequately explain the basis for the class claims. This is necessary to assess whether the claims in the Blackrock Federal Action (which are based on the PSAs – not the Registration Statements in the instant case) "arise out of or are based upon the allegations, transactions, facts, matters, events, disclosures, statements, occurrences, representations, conduct, acts, or omissions or failures to act that … could have been alleged or asserted in the Action" and whether the Trustee claims "relate to the purchase, other acquisition, or sale of the Certificates." Stipulation ¶1(ee). Either way, this Court should not disturb this Settlement or the release language, which is fair and appropriately limited on its face.

Accordingly, this Court should decline to decide whether the Release in this case would preclude the Blackrock Plaintiffs from pursuing their "alternative," inchoate class action allegations in its federal derivative suit against the DB Trustee. *See Worldcom*, 388 F. Supp. 2d at 344; *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), MDL No. 1283, 2005 WL 1635158, at *15 (S.D.N.Y. July 8, 2005) (in rejecting challenge to settlement, court held that it could not "provide an advisory opinion as to the scope of the release" where there was no genuine dispute as to the scope or enforceability of a settlement release (citing *Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 525 (2d Cir.2001) ("An Article III federal court ... has no jurisdiction to render advisory opinions."))).[6]

---

[5] *See* Fed. R. Civ. P. 8(c)(1) (release and res judicata are affirmative defenses); *DiIorio v. Gibson & Cushman of New York, Inc.*, 161 A.D.2d 532, 533 (N.Y. App. Div. 1990) (under CPLR 3018(b) release is an affirmative defense); *see also Eckhaus v. Blauner*, No. 94 Civ. 5635 (CSH), 1997 WL 362166, at *6 (S.D.N.Y. June 26, 1997) ("Res judicata is an affirmative defense. The party asserting it bears the burden of persuasion and proof.").

[6] Additionally, PIMCO's Request for Clarification fails to prove membership in the Settlement Class. Exhibit 4 to PIMCO's objection is a generalized certification attesting that "certain funds and accounts" have "holdings" in

### III. PLAINTIFFS' COUNSEL SHOULD BE AWARDED THEIR REQUESTED ATTORNEYS' FEES

Plaintiffs' Counsel have collectively moved for an award of $44.89 million in attorneys' fees and the reimbursement of at least $2,971,114.16 in litigation expenses, plus interest, and reimbursement of certain reasonable expenses totaling $27,725 to Lead Plaintiffs. The fee request represents less than 13% of the Global Settlement Fund, and a collective multiplier of 1.83 on all counsel's time.[7] The requested fee was determined and capped by a fee agreement negotiated by Lead Plaintiffs at the outset of the litigation – an agreement that resulted in a significantly lower fee request here than in similar MBS class actions.[8]

Following the extensive Court-ordered notice program, directed at the sophisticated, institutional investors that comprise the Settlement Classes, there were ***no objections*** to the requested fee. The lack of objections, coupled with the fact that the requested fee falls far below any award in similarly-situated MBS class actions, strongly supports awarding Plaintiffs' Counsel their requested fee. Indeed, applying the fee award percentages from other MBS cases that settled above $100 million, the fees here would range from $58.82 million to $63.33 million.

Moreover, given the lack of objections to the fee request, Plaintiffs' Counsel's request that the Court issue an order permitting counsel to withdraw any Court-awarded fees and

---

certain IndyMac offerings. ECF No. 554-5. The Court's September 30, 2014 Order Certifying Class for Settlement and Approving Notice to the Settlement Class of the Proposed Settlement with Underwriter Defendants (ECF No. 541), at ¶ 17, states that "[a]ny objection must include … a list and documentation of all of the Settlement Class Member's transactions involving the Certificates, including brokerage confirmation receipts or other competent documentary evidence of such transactions, including the amount and date of each purchase or sale and the prices paid and/or received." Since PIMCO's Request for Clarification fails to provide this Court ordered information, PIMCO's objection may be overruled on this ground alone. *See e.g., Feder v. Elec. Data Sys. Corp.,* 248 Fed. Appx. 579, 581 (5th Cir. 2007) (dismissing appeal for lack of objector standing).

[7] The lodestar of $24,568,369.50 is based on 55,372.25 hours of time, for a blended hourly rate of $443.69. As detailed in Plaintiffs' Counsel's Fee and Expense Brief, Lead Counsel has set forth their recommended breakdown of proposed fee awards to each of Plaintiffs' Counsel. *See* Fee and Expense Brief Ex. A. This chart is updated with this filing and is attached as Exhibit A to the Declaration of Nicole Lavallee in Further Support ("Lavallee Reply Decl."), filed herewith. Plaintiffs' Counsel supported their motion with declarations that identified the attorneys and other professionals who worked on the case, listed the number of hours they worked for each category of tasks and their hourly rates, and described in detail the work each firm performed over the nearly six years of litigation required to reach this successful resolution. *See* ECF Nos. 551-5, 551-6, and 552-1 through 552-6.

[8] For example, other MBS settlements above $100 million resulted in fee awards in the range of ***17% to 19.75%*** of the common fund, whereas, here, Lead Counsel seeks ***less than 13%*** of the common fund. Decl. of Patrick T. Egan (ECF No. 550-1), at ¶¶ 160-61 & Exs. C-G (ECF No. 550-2).

9

expenses immediately upon this Court's final approval of the Settlement. Since there is no objection to the fees and expense request, the Settlement Class will not bear any credit risk associated with the pending objection. Indeed, even if there is an appeal, it will relate to the scope of the release, not the attorney fee and expense order, thus will not affect the Settlement Classes' ultimate recovery.[9] By stipulating to the immediate payment of any court-awarded fees and expenses, the Settling Defendants agreed to bear any risks of repayment of fees should an appellate court reverse the District Court's approval of the Settlement or attorneys' fees and expenses. *See* Stipulation ¶ 22.

As previewed in the Fee and Expense Motion, Lead Plaintiffs have incurred some additional expenses since the December 30, 2014 submission, for which they also seek reimbursement. These expenses total $20,719.12, which is below the $25,000 projected amount. *See* Lavallee Reply Decl. ¶¶ 2-4. Accordingly, Plaintiffs' Counsel seek an order awarding $44.89 million for fees and reimbursement of $2,991,833.28 in expenses. *Id.* Ex. A. In Exhibit A to the Lavallee Reply Declaration, Lead Plaintiffs have included a recommendation for allocation of the fees.

## **CONCLUSION**

For the reasons set forth herein and in Lead Plaintiffs' and Plaintiffs' Counsel's initial memoranda of law and declarations in support, Lead Plaintiffs respectfully request that the Court (1) find that the proposed class action Settlement with the Underwriter Defendants is fair, reasonable and adequate; (2) find that the Plan of Allocation is fair, reasonable and adequate; (3) finally certify the Underwriter Defendant Settlement Class; (4) grant final approval to the Underwriter Defendant Settlement; and (5) approve Plaintiffs' Counsel's request for attorneys' fees and payment of litigation expenses (including those incurred by Lead Plaintiffs).

---

[9] Plaintiffs' Counsel's request is also for fees in connection with the Individual Defendants Settlement, which was finally approved in December 2012. Plaintiffs' Counsel have requested that any awarded fees and expenses be proportionally allocated between the two settlements.

Dated:  January 27, 2015                      Respectfully submitted,

**BERMAN DEVALERIO**

By:    */s/ Nicole Lavallee*

Joseph J. Tabacco, Jr. (JJT-1994)
Nicole Lavallee (admitted *pro hac vice*)
Anthony D. Phillips (admitted *pro hac vice*)
One California Street Suite 900
San Francisco, California 94111
Telephone:    (415) 433-3200
Facsimile:    (415) 433-6382
jtabacco@bermandevalerio.com
nlavallee@bermandevalerio.com
aphillips@bermandevalerio.com

Patrick T. Egan (PE-6812)
One Liberty Square
Boston, Massachusetts 02109
Telephone:    (617) 542-8300
Facsimile:    (617) 542-1194
pegan@bermandevalerio.com

*Class Counsel, Counsel for Lead Plaintiffs, the Wyoming State Treasurer and Wyoming Retirement System, and Counsel for Settlement Class Representative the Los Angeles County Employees Retirement Association*