UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
IN RE INDYMAC MORTGAGE-BACKED    :
SECURITIES LITIGATION             :    Master Docket No.
                                  :    09-CIV-04583 (LAK)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                  :
                                  :
THIS DOCUMENT RELATES TO:         :
ALL ACTIONS                       :
                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RESPONSE OF DEFENDANT DEUTSCHE BANK SECURITIES INC. TO THE
OBJECTION OF PACIFIC INVESTMENT MANAGEMENT COMPANY, LLC
TO LEAD PLAINTIFFS' PROPOSED CLASS SETTLEMENT WITH
<u>THE UNDERWRITER DEFENDANTS</u>**

 

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035

Attorneys for Defendant
Deutsche Bank Securities Inc.

January 27, 2015

Defendant Deutsche Bank Securities Inc. ("DBSI") respectfully submits this memorandum of law in response to the sole objection to Lead Plaintiffs' proposed class settlement with the Underwriter Defendants,[1] filed by Pacific Investment Management Company, LLC ("PIMCO").  *See* PIMCO Objection, dated Jan. 13, 2015 ("PIMCO Br.") (Dkt. 554).

## INTRODUCTION

The Underwriter Defendants have agreed in principle to pay $340 million in cash to fully and finally resolve this action.  According to Lead Plaintiffs, the proposed settlement is "the second largest class action recovery for MBS investors since the 2008 financial crisis."  Dkt. 547.  Although the proposed scope of the settlement release is no broader than the settlement releases that have been approved by this Court and others in connection with prior settlements of class actions involving residential mortgage-backed securities ("RMBS"),[2] PIMCO objects to the proposed settlement on the ground that the settlement release is "impermissibly overbroad."  PIMCO Br. at 1.

---

[1]   The "Underwriter Defendants" are DBSI, Credit Suisse Securities (USA) LLC, J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.), Morgan Stanley & Co. LLC (f/k/a Morgan Stanley & Co. Incorporated), and RBS Securities Inc. (f/k/a Greenwich Capital Markets, Inc.), and UBS Securities LLC.

[2]   *See*, *e.g.*, Stipulation of Settlement and Final Judgment and Order of Dismissal with Prejudice in *Tsereteli v. Residential Asset Securitization Trust 2006-A*8, No. 08-cv-10637 (S.D.N.Y.) (Exhibits A and B to the Declaration of Robert F. Serio, dated Jan. 27, 2015); Stipulation and Agreement of Settlement and Order and Final Judgment in *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, No. 09-cv-1110 (S.D.N.Y.) (Exs. C-D); Stipulation and Agreement of Settlement and Amended Order and Final Judgment in *N.J. Carpenters Vacation Fund v. Harborview Mortg. Loan Trust 2006-4*, No. 08-cv-5093 (S.D.N.Y.) (Exs. E-F); Stipulation and Agreement of Settlement and Final Order and Judgment in *Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt-A Sec., Inc.*, No. 08-cv-3178 (E.D.N.Y.) (Exs. G-H); Stipulation of Settlement and Final Order and Judgment in *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust, Inc.*, No. 08-cv-1418 (E.D.N.Y.) (Exs. I-J).

To the extent PIMCO, in its alleged capacity as "investment manager of certain funds and accounts that are members of the Underwriter Defendant Settlement Class," *id.*, even has standing to object to the settlement,[3] its objection is unfounded and nothing more than an attempt to justify further claims for recovery by settlement class members ***after*** the stipulation of settlement in this action was publicly filed.

By PIMCO's own concession, the definition of "Underwriter Defendant Settlement Class" does not include the trusts for the RMBS offerings that are at issue in both this action and *Blackrock Balanced Capital Portfolio (FI), et al. v Deutsche Bank National Trust Company, et al.*, No. 14-cv-9367 (S.D.N.Y). *See* PIMCO Br. at 1 ("The Common Trusts are not members of the Underwriter Defendant Settlement Class."). Thus, the proposed settlement between Lead Plaintiffs and the Underwriter Defendants does not purport to release the claims that have been asserted derivatively on behalf of the trusts in the *Blackrock* action. Indeed, PIMCO never explains how the settlement release could be "impermissibly overbroad" with regard to the derivative claims in the *Blackrock* action when the definition of "Underwriter Defendant Settlement Class" does not include the trusts as class members.

The reason PIMCO has raised a *faux* objection relating to the derivative claims in the *Blackrock* action is to obscure its true objective: to carve out from the settlement release in this action (a release that was negotiated and bargained for by DBSI and the other Underwriter Defendants) the putative class claims in the *Blackrock* action asserted in the alternative on behalf of many members of the "Underwriter Defendant Settlement Class," among others, *after* the terms of the settlement between the Lead Plaintiffs and the Underwriter Defendants in this action

---

[3] *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-11 (2d Cir. 2008) (holding that investment advisor had no standing to sue on behalf of its clients).

were publicly filed. Indeed, while the derivative claims in the *Blackrock* action were first asserted in state court on June 18, 2014, *before* a settlement between Lead Plaintiffs and the Underwriter Defendants had been reached, the putative class claims that PIMCO seeks to carve out of the settlement release were not asserted until November 24, 2014, more than two months after the stipulation of settlement was filed in this action on September 11, 2014.

This Court should reject the attempt by PIMCO, which is not even a party to the *Blackrock* action, to carve out and preserve putative class claims in the *Blackrock* action relating to 30 of the 50 RMBS offerings covered by the Underwriter Defendant Settlement. As explained below, PIMCO does not have standing to object to the Underwriter Defendant Settlement. Moreover, even if PIMCO did have standing, its objection is unfounded because "[c]lass actions may release claims, even if not pled, when such claims arise out of the same factual predicate as settled class claims." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 108 (2d Cir. 2005). Here, the underlying factual predicate for both this action and the *Blackrock* action – IndyMac's alleged abandonment of loan underwriting guidelines – is the same.

## BACKGROUND

### I. This Action

On May 14, 2009, the first complaint in this consolidated action was filed. *See* Complaint in *Police and Fire Retirement System of the City of Detroit v. IndyMac MBS, Inc., et al.*, No. 09 Civ. 04583 (S.D.N.Y.) (Dkt. 1). The named defendants included the trusts for offerings of IndyMac-sponsored RMBS, Deutsche Bank National Trust Company ("DBNTC"), in its capacity as "the trustee for the IndyMac Trusts," and the financial institutions that participated as underwriters in the RMBS offerings, including DBSI. *Id.* ¶¶ 23, 38. DBNTC is "an affiliate of Underwriter Defendant Deutsche Bank Securities Inc." PIMCO Br. at 1.

4

On July 29, 2009, this Court appointed Lead Plaintiffs and Lead Counsel for the putative class, and directed Lead Counsel to "call meetings of plaintiffs' counsel as they deem necessary and appropriate," "coordinate the preparation and filings of all pleadings, "coordinate all settlement negotiations with counsel for defendants," and be "the spokespersons for all plaintiffs' counsel." *See* Dkt. 58 ¶¶ 12, 15.

Lead Plaintiffs filed a consolidated complaint, an amended consolidated complaint, and a second amended consolidated complaint on October 9, 2009, October 29, 2009, and August 15, 2011, respectively. *See* Dkt. 127, 131, 337. The core allegation in each of Lead Plaintiffs' pleadings was that IndyMac abandoned its loan underwriting standards in connection with the mortgage loans underlying the RMBS sold to the putative class, leading to losses suffered by certificate-holders in the trusts. *See, e.g.*, Second Amended Complaint ¶¶ 121, 124, 136 (Dkt. 337).

## II.  Lead Plaintiffs' Proposed Settlement With The Underwriter Defendants

On July 23, 2014, Lead Plaintiffs reached a settlement in principle with DBSI, Credit Suisse Securities (USA) LLC, J.P. Morgan Securities LLC, Morgan Stanley & Co. LLC, RBS Securities Inc., and UBS Securities LLC.

Following weeks of negotiation over the terms of the settlement, Lead Plaintiffs and the Underwriter Defendants entered into a Stipulation of Settlement on September 8, 2014, which was filed with the Court on September 11, 2014. *See* Dkt. 536-1. After a conference with the Court on September 18, 2014, the parties revised certain provisions of the stipulation not relevant here, and entered into an Amended Stipulation of Settlement on September 19, 2014, which was filed with the Court on September 22, 2014. *See* Dkt. 539-1.

On September 30, 2014, the Court entered an order certifying, and approving notice to, the proposed settlement class for the Underwriter Defendant Settlement. *See* Dkt. 541. The

proposed settlement class certified by the Court encompasses "[a]ll Persons who at any time purchased or otherwise acquired interests in the Certificates" originally issued by 50 different trusts, with certain exclusions.  *Id.* ¶ 3.  The certified settlement class does not include as members any of the 50 trusts that issued the Certificates.  *Id.*

### III.      The *Blackrock* Action

The *Blackrock* action was originally filed in state court.  *See* Complaint in *BlackRock Balanced Capital Portfolio (FI), et al. v. Deutsche Bank National Trust Company, et al.*, No. 651865/2014 (Sup. Ct. N.Y. Cnty.) ("*Blackrock* State Complaint") (Dkt. 554-4).  The state court complaint filed on June 18, 2014 asserted proposed derivative claims on behalf of various trusts for money damages and injunctive relief against DBNTC and Deutsche Bank Trust Company Americas ("DBTCA"), but did not assert any direct claims on behalf of holders of IndyMac-sponsored RMBS certificates.  Plaintiffs moved to voluntarily dismiss the state court action on November 24, 2014, and the motion subsequently was granted.

On November 24, 2014, the plaintiffs in the *Blackrock* action filed suit in federal court.  *See* Complaint in *Blackrock Balanced Capital Portfolio (FI), et al. v Deutsche Bank National Trust Company, et al.*, No. 14-cv-9367- (S.D.N.Y) ("*Blackrock* Federal Complaint") (Dkt. 554-2).  Like the state court complaint, the federal court complaint asserted proposed derivative claims on behalf of various trusts.  In the alternative to the proposed derivative claims, however, the federal court complaint asserted direct claims on behalf of a putative class of "all current owners of certificates in the Trusts."  Because 30 of the 50 RMBS offerings covered by the settlement between Lead Plaintiffs and the Underwriter Defendants are also at issue in the *Blackrock* Federal Complaint, the litigation class proposed in that complaint includes many members of the "Underwriter Defendant Settlement Class" certified by this Court on September 30, 2014.

Although various funds and accounts managed by PIMCO are plaintiffs in the *Blackrock* action, PIMCO itself has never been, and is not currently, a party to the *Blackrock* action. *See Blackrock* State Complaint (Dkt. 554-4); *Blackrock* Federal Complaint (Dkt. 554-2).

## IV.     PIMCO Files The Sole Objection To The Underwriter Defendant Settlement

The deadline for objections to the proposed settlement was January 13, 2015. No member of the "Underwriter Defendant Settlement Class" filed an objection. Instead, PIMCO filed an objection in its alleged capacity as "investment manager of certain funds and accounts that are members of the Underwriter Defendant Settlement Class." PIMCO Br. at 1. PIMCO contends that the proposed release by settlement class members is "impermissibly overbroad" to the extent it releases (i) derivative claims asserted on behalf of 30 trusts in the *Blackrock* action; and (ii) direct claims asserted in the *Blackrock* action on behalf of members of the "Underwriter Defendant Settlement Class" certified by this Court. *Id.*

## ARGUMENT

PIMCO's objection to the proposed settlement reached by Lead Plaintiffs and the Underwriter Defendants is unfounded and should be rejected for at least three independent reasons.

*First*, PIMCO has no standing to object. PIMCO is not a member of the "Underwriter Defendant Settlement Class" certified by this Court. Instead, it has filed an objection in its capacity as "investment manager of certain funds and accounts that are members of the Underwriter Defendant Settlement Class." PIMCO Br. at 1. As the Second Circuit has explained, absent an express assignment of title to its clients' claims, an investment advisor with unfettered discretion to make investment decisions for its clients and power of attorney to pursue claims on behalf of its clients has no standing to litigate on behalf of its clients. *See W.R. Huff*, 549 F.3d at 110 ("We reject Huff's assertion of a prudential exception based on 'investment

7

manager standing.'"). Here, PIMCO has not provided any evidence that it is the assignee of claims held by members of the "Underwriter Defendant Settlement Class."

*Second*, as PIMCO itself concedes, the "Underwriter Defendant Settlement Class" certified by this Court does not include *any* RMBS trust as a member, much less the trusts for the RMBS at issue in the *Blackrock* action. *See* PIMCO Br. at 1. Because the "Underwriter Defendant Settlement Class" does not include any RMBS trusts, the Underwriter Defendant Settlement does not purport to release any trust claims, including claims which the plaintiffs in the *Blackrock* action purport to assert derivatively on behalf of trusts.[4]

*Third*, it is well established that "in order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982); *see also Wal-Mart*, 396 F.3d at 108 ("When considering the permissibility of a release, the overlap between elements of *claims* is not dispositive. Class actions may release claims, even if not pled, when such claims arise out of the same factual predicate as settled class claims.") (emphasis in original).

---

[4] PIMCO asserts that "the Settlement Agreement's release may include claims that certificate-holders hold derivatively through the trust" because the definition of "Released Claims" in the Amended Stipulation of Settlement *excludes* "claims, if any, filed prior to July 23, 2014 solely and exclusively to the extent that such claims asserted contractual repurchase rights with respect to any residential mortgage loan included in any of the Offerings." PIMCO Br. at 5. PIMCO is apparently concerned that the "Released Claims" encompass contractual repurchase claims filed after July 23, 2014, but ignores that the proposed derivative claims in the *Blackrock* action are not repurchase claims asserted against the sellers of any mortgage loans, but claims against DBNTC and DBTCA in their capacities as trustees for various trusts. *See Blackrock* Federal Complaint ¶¶ 526-79 (Dkt. 554-2).

Here, the factual predicate for the questions at the "core" of this action and the direct claims asserted on behalf of a putative class of certificate-holders in the *Blackrock* action are the same. Indeed, although the Lead Plaintiffs in this action and the plaintiffs in the *Blackrock* action assert different causes of action, the complaints in both actions are based on alleged losses suffered by certificate-holders because of "bad" mortgage loans that were securitized as a result of IndyMac's alleged abandonment of loan underwriting guidelines. *Compare*, *e.g.*, Second Amended Complaint ¶¶ 121, 124, 136 (Dkt. 337), *with Blackrock* Federal Complaint ¶¶ 6-10, 228, 298-318, 357-93, 404-12 (Dkt. 554-2).

Under analogous circumstances, the First Circuit rejected an argument similar to PIMCO's: "That the complaint in this case emphasized federal disclosure laws whereas [the complaint in another action] placed its emphasis on state fiduciary concepts is beside any relevant point. The two suits, notwithstanding any differences in remedies sought or theories of recovery pleaded, shared a common gravamen." *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 33 (1st Cir. 1991). Each action presents its own claim elements and defenses, but in each action, a finding that IndyMac had complied with its underwriting guidelines would preclude liability.

PIMCO avers that "[t]he Class Action had nothing to do with the Trustee's wrongful conduct," PIMCO Br. at 6, but ignores that the original complaint in this consolidated class action asserted claims against DBNTC in its capacity as trustee for various trusts. *See* Dkt. 1, ¶ 23. The prior assertion of claims against DBNTC in this action underscores that the factual issues at the "core" of this action and the direct claims asserted in the *Blackrock* action are the same. Moreover, even if DBNTC had never previously been named as a defendant, it is well established that "a class settlement may properly include a release of factually related claims

9

against non-parties to the action." 2 McLaughlin on Class Actions § 6:29 (2014). Indeed, in affirming a district court's approval of a settlement that released claims against non-party banks, the Second Circuit observed that "class action settlements have in the past released claims against non-parties where, as here, the claims against the non-party being released were based on the same underlying factual predicate as the claims asserted against the parties to the action being settled." *Wal-Mart*, 396 F.3d at 109 (citation omitted).

In arguing that here was "no consideration" paid for the claims against DBNTC, PIMCO Br. at 1, PIMCO ignores that DBSI's agreement to settle was based on a release covering both itself and its affiliates. In prior settlements of RMBS class actions, this Court and others have repeatedly approved releases covering both settling defendants and their affiliates. *See*, *e.g.*, Stipulation of Settlement and Final Judgment and Order of Dismissal with Prejudice in *Tsereteli v. Residential Asset Securitization Trust 2006-A*8, No. 08-cv-10637 (S.D.N.Y.) (Serio Decl. Exs. A-B); Stipulation and Agreement of Settlement and Order and Final Judgment in *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, No. 09-cv-1110 (S.D.N.Y.) (Exs. C-D); Stipulation and Agreement of Settlement and Amended Order and Final Judgment in *N.J. Carpenters Vacation Fund v. Harborview Mortg. Loan Trust 2006-4*, No. 08-cv-5093 (S.D.N.Y.) (Exs. E-F); Stipulation and Agreement of Settlement and Final Order and Judgment in *Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt-A Sec., Inc.*, No. 08-cv-3178 (E.D.N.Y.) (Exs. G-H); Stipulation of Settlement and Final Order and Judgment in *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust, Inc.*, No. 08-cv-1418 (E.D.N.Y.) (Exs. I-J).

PIMCO misguidedly relies on *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9 (2d Cir. 1981). There, the plaintiffs were "empowered to represent members of the class solely with respect to the contracts in which all members of the class had a

common interest:  contracts liquidated between April 13 and May 7." *Id*. at 17.  Based on the "consequences of this limitation," the Second Circuit found that lead plaintiffs lacked the authority to settle claims for contracts that were unliquidated during the class period.  *Id*. at 17-18.  PIMCO does not, and cannot, identify any comparable limitation on Lead Plaintiffs' scope of authority here.

Moreover, in *National Super Spuds*, the Second Circuit recognized that "a settlement could properly be framed so as to prevent class members from subsequently asserting claims relying on a legal theory different from that relied upon in the class action but depending on the very same set of facts."  *Id*. at 18 n.7; *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 341-42 (S.D.N.Y.  2005) (rejecting objection to scope of release in class action settlement because objector's claims were "based on the same factual predicate as those brought by the Lead Plaintiff in the class action").  That is precisely the situation here.

## CONCLUSION

For all these reasons, this Court should reject PIMCO's objection to the scope of the release in the settlement negotiated between Lead Plaintiffs and the Underwriter Defendants.

Dated:  New York, New York
       January 27, 2015

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Robert F. Serio
    Robert F. Serio (RSerio@gibsondunn.com)
    Aric H. Wu (AWu@gibsondunn.com)

200 Park Avenue
New York, New York 10166-0193
Phone:  (212) 351-4000
Fax:  (212) 351-4035

Attorneys for Defendant
Deutsche Bank Securities Inc.