UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re INDYMAC MORTGAGE-BACKED SECURITIES LITIGATION | Master Docket No. 09-Civ. 04583 (LAK)<br>ECF CASE |
| This Document Relates To:<br>    ALL ACTIONS | |

MEMORANDUM OF LAW
IN SUPPORT OF LEAD PLAINTIFFS' FINAL ACCOUNTING OF THE NET
SETTLEMENT FUNDS AND MOTION FOR APPROVAL OF PAYMENT OF
CLAIMS ADMINSTRATION EXPENSES

Lead Plaintiffs, Wyoming Retirement System and Wyoming State Treasurer, respectfully submit this memorandum in support of Lead Plaintiffs' Final Accounting of the Net Settlement Funds and Motion for Approval of Payment of Claims Administration Expenses (the "Motion"). Details of the settlement distribution process and final accounting are set forth in the accompanying Declaration of Jason Rabe Regarding Final Accounting of the Net Settlement Funds, dated April 29, 2021 ("Rabe Declaration" or "Rabe Decl."), submitted on behalf of the Court-approved Claims Administrator, Rust Consulting, Inc. ("Rust" or the "Claims Administrator").[1]

---

[1] Unless otherwise defined, the capitalized terms used herein shall have the meanings set forth in the Rabe Declaration, the Amended Stipulation and Agreement of Partial Settlement, dated July 31, 2012 (the "Individual Defendant Settlement Stipulation") (ECF No. 365-1), the Amended Stipulation and Agreement of Settlement, dated September 19, 2014 and filed September 22, 2014 (the "Underwriter Defendant Settlement Stipulation") (ECF No. 539-1) (collectively, the "Stipulations"), and notices of pendency of class action settlements mailed in connection with both the Underwriter Defendant Settlement and the Individual Defendant Settlement (collectively, the "Notice Packets").

**I.     PRELIMINARY STATEMENT**

This Motion marks the conclusion of this litigation, following the distribution of nearly all sums from two Court-approved settlements, totaling $346 million.[2] Excluding the Court's approved fees and expenses, the Claims Administrator has now distributed approximately $312,816,841.92 to authorized claimants, in a three-phased distribution process, consistent with the plan of allocation and distribution procedures authorized by the Court. Of that amount, only $11,592.68 remains in the Net Settlement Funds (the "Remaining Balance"), meaning that over 99.996% of the Net Settlement Funds have been distributed to and received by authorized claimants.

As detailed in the accompanying Rabe Declaration, the Claims Administrator believes it has used reasonable and diligent efforts to distribute the Net Settlement Funds and that at this time, neither the Claims Administrator nor Lead Counsel believe that it would be feasible or economic to conduct a redistribution of the $11,592.68 Remaining Balance. Rather, because the Claims Administrator's outstanding and unpaid administrative fees and expenses exceed the Remaining Balance, Lead Plaintiff, Lead Counsel and Rust respectfully request that the Court enter an Order authorizing the payment of the Remaining Balance to the Claims Administrator to pay for incurred costs, and that this matter be closed. Any unpaid administrative costs that shall remain afterwards will be discounted by Rust so that no further payments will be due.

**II.    BACKGROUND ON SETTLEMENT AND CLAIMS DISTRIBUTION PROCESS**

This Action was resolved pursuant to two settlements for a total of $346 million. The Individual Defendant Settlement was reached in July 2012 for $6 million. On September 6, 2012,

---

[2] "Settlements" means the $340 million settlement with the Underwriter Defendants (the "Underwriter Defendant Settlement") and the $6 million settlement with the settling Individual Defendants (the "Individual Defendant Settlement").

this Court instructed Lead Plaintiffs and the Court-approved Claims Administrator to provide notice to members of the Individual Defendant Settlement Class of the Individual Defendant Settlement, the first partial settlement.  Because of the size of the Individual Defendant Settlement, Lead Plaintiffs proposed, and the Court approved, delaying the Claims filing and distribution process until after the Court approved final settlements or other dispositions against or in favor of the Non-Settling Defendants.[3]  This settlement was approved on December 18, 2012 (ECF No. 410).

Several years later, in September 2014, Lead Plaintiffs reached a settlement with the Remaining Defendants for a total of $340 million, the Underwriter Defendant Settlement.  On October 6, 2014, the Court instructed Lead Plaintiffs and Rust to provide Notice to members of the Individual Defendant Settlement Class and a proposed Plan of Allocation that provided for the distribution of the settlement funds in both Settlements (ECF No. 542).  The Court also simultaneously instructed Lead Plaintiffs and Rust to issue notice of the Plan of Allocation to the Individual Defendant Settlement Class.  The Court approved the Underwriter Defendant Settlement and the Plan of Allocation on February 23, 2015 (ECF Nos. 565, 566) and directed the parties to implement and consummate the Stipulations in accordance with their terms and provisions.

The Underwriter Defendant Settlement Fund and the Individual Defendant Settlement Fund (the "Funds"), together contain approximately $312,816,841.92 for distribution.[4]  This

---

[3] *See* Order Certifying Class for Settlement and Approving Notice to the Settlement Class of the Proposed Settlement with Underwriter Defendants, dated September 30, 2014 ("Underwriter Defendant Notice Order") (ECF No. 541) and Order Approving Supplemental Notice to the Individual Defendant Settlement Class, dated October 6, 2014 ("Individual Defendant Notice Order") (ECF No. 542) (together "Notice Orders").

[4] Rabe Decl. ¶9.

number reflects the $340 million Underwriter Defendant Settlement Fund, plus the $6 million Individual Defendant Settlement Fund, plus interest and an increase in T-Bill value of approximately $848,527.04, less (i) attorneys' fees and expenses totaling $33,385,896.32;[5] and (ii) payments of $633,879.52 for the claims administration process.[6]  In March 2017, the Claims Administrator estimates that $43,546 would be required to complete the Initial Distribution,[7] and that additional claims administration expenses will be incurred in the Reserve Distribution and other distributions made thereafter.  At that time, Lead Plaintiff informed the Court that based on the claim's administration expenses incurred to date and the estimated additional expenses, Lead

---

[5] *See* Memorandum Opinion dated Mar. 24, 2015 (ECF No. 569) (approving award of $28,477,656.33 for attorneys' fees and $2,991,833.28 for litigation expenses (an aggregate award of $31,469,489.61); Order Awarding Expenses and Establishment of a Litigation Fund, dated December 18, 2012 (ECF No. 408) (approving award of $450,561.04 to Lead Counsel for reimbursement of litigation expenses from the Individual Defendant Settlement Fund and establishing $1 million "Litigation Fund" to be held in an interest bearing account from Individual Defendant Settlement); Order Granting Lead Counsel's Supplemental Application for Reimbursement of Certain Previously Submitted Expert and Consultant Expenses and Application for Reimbursement of Certain Litigation Expenses Incurred Between November 1, 2012 and January 31, 2013, dated April 5, 2013 (ECF No. 426) (approving additional award of $465,497.43 to Lead Counsel for reimbursement of litigation expenses from the Individual Defendant Settlement Fund and approving award of $324,818.22 for reimbursement of expenses from Litigation Fund); Order Granting Lead Counsel's Second Application for Withdrawal of Monies from the Litigation Fund, dated August 27, 2013 (ECF No. 467) (approving award of the balance of the Litigation Fund which contained $675,530.02 (which includes accrued interest)).

[6] *See* Rabe Decl. at ¶13; *see also* Affidavit of Jason Rabe Regarding (A) Processing of Claim Forms, (B) Calculation of Recognized Claims Pursuant to the Plan of Allocation, and (C) Proposed Plan for Distribution of Net Settlement Funds, filed on March 17, 2017 (ECF. No. 598) ("Rabe Aff.") ¶52 & Ex. O.  These payments were authorized pursuant to Order Certifying the Class for Purposes of Partial Settlement and Approving Notice to the Settlement Class, dated September 6, 2012 (ECF No. 368) (approving Notice and Administrative Costs up to $600,000 for the Individual Defendant Settlement); Order Approving Supplemental Notice to the Individual Defendant Settlement Class, dated October 6, 2014 (ECF No. 542) (same); Order Certifying the Class for Settlement and Approving Notice to the Settlement Class of the Proposed Settlement with the Underwriter Defendants, dated October 6, 2014 (ECF No. 541) (approving Notice and Administrative Costs up to $600,000 for the Underwriter Defendant Settlement).

[7] *See* Rabe Aff. ¶52 & Ex. P.

Counsel anticipated that claims administration expenses would not exceed the previously authorized amount of $1,200,000 by the Court.[8]

On April 18, 2017, the Court issued a Distribution Order that approved a multi-stage distribution of the Net Settlement Funds. ECF No. 600 ("Distribution Order"). In compliance with the Distribution Order, the distribution of the Net Settlement Funds to Authorized Claimants commenced on May 23, 2017 (the "Initial Distribution"). Rust distributed 2,065 payments totaling $297,106,051.29 to Authorized Claimants in the Initial Distribution. Rabe Decl. ¶3. Pursuant to the Distribution Order, 95% of the Net Settlement Funds were distributed in the Initial Distribution. *Id*. ¶4. The remaining portion was set aside (the "Reserve") to address any contingencies that might arise such as such as paying any remaining taxes due on interest earned by the Settlement Funds, paying any additional untimely but otherwise valid claims or paying any adjustments to claims, if necessary and approved by the Court, and any additional fees and expenses awarded by the Court. *Id*.

Next, the Reserve, in addition to any leftover funds from uncashed checks or payments returned as unwanted in the Initial Distribution, was distributed (the "Reserve Distribution") on October 4, 2018. Rabe Decl. ¶5. Rust distributed 1,845 payments totaling $26,048,902.44 to Authorized Claimants in the Reserve Distribution. *Id*. The Reserve Distribution included Authorized Claimants who (i) cashed their check from the Initial Distribution; (ii) calculated to a check amount of at least $10 in the Reserve Distribution based on their *pro rata* share of the remaining Net Settlement Funds; and (iii) were not Claims paid in full in the Initial Distribution. *Id*. Subsequently, a third and final distribution of the Net Settlement Funds occurred on October 15, 2019. *Id*. ¶6. Rust distributed 744 payments totaling $166,176.12 to Authorized Claimants

---

[8] *See supra* note 6.

who cashed their Initial Distribution and Reserve Distribution checks and whose *pro rata* share of the remaining Net Settlement Funds calculated to at least $10 (the "Third Distribution"). *Id*.

As in other settlements Rust has administered, Rust reissued and re-mailed checks to Authorized Claimants if: a) the original check was returned to Rust by the United States Postal Service ("USPS") with a forwarding address; b) the original check was returned to Rust by the USPS without a forwarding address but Rust was able to ascertain the Authorized Claimants' current address through an address search vendor; c) the original check was stale-dated and the Authorized Claimants requested that a new check be issued; or d) the original check was reissued due to matters relating to operation of law issues (e.g., estate and trust closings, deaths, divorce, etc.). Rabe Decl. ¶7. In addition, Rust conducted an outreach campaign using phone numbers and/or email addresses, if applicable, in an attempt to get checks cashed or reissued. *Id*. ¶8. For example, there are 30 remaining uncashed checks from the Third Distribution. *Id*. Rust reached out to all of them except for one that did not have any contact information. *Id*. Rust was informed by many of the Authorized Claimants that they did not intend to cash their payment because the account was now closed, or the client who they filed on behalf of, refused the funds. *Id*. As a result of Rust's follow-up efforts, as of December 31, 2020, approximately 714 payments totaling approximately $164,572.95, or approximately 99.04% of the $166,176.12 distributed in the Third Distribution were cashed by Authorized Claimants. *Id*. ¶9.

Thus, to date, of the approximately $312.8 million available for distribution, nearly every penny has been distributed and received by authorized claimants. Rabe Decl. ¶9. As of April 9, 2021, $11,592.68 remains in the Net Settlement Funds including approximately $1,603.17 in uncashed checks, approximately $6,763.12 from payments returned as unwanted, and

6

approximately $3,226.39 in reserve for anticipated administrative costs. Rabe Decl. ¶10. In addition, all uncashed or undeliverable checks are now stale-dated. *Id.*

### III. CLAIMS ADMINISTRATION EXPENSES

To date, Rust has received payments of $633,879.52 in connection with the administration of the Settlement, consistent with this Court's orders authorizing up to $1.2 million in claims administration costs. Rabe Decl. ¶13; *see supra* n.6. Of that amount, $111,624.80 was incurred and paid since the March 2017 submission of the Rabe Aff., in connection with the three rounds of distributions. *Id.* In addition, the Claims Administrator has outstanding invoices totaling $12,214.93. Details of those expenses are attached as Exhibits A and B to Rabe Declaration. Thus, Lead Plaintiff, Lead Counsel and Rust all respectfully request that the Court approve the additional expenses incurred and paid to the Claims Administrator to date and authorize the payment of the Remaining Balance of $11,592.68 to the Claim Administrator as representing the final and full payment in this matter. As noted above, the unpaid administrative costs that shall remain afterwards will be discounted by Rust so that no further payments will be due.

### IV. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the proposed Order: (a) approving additional expenses incurred and paid to the Claims Administrator; (b) authorizing the payment of the Remaining Balance of $11,592.68 to the Claim Administrator as representing the final and full payment; and (c) close this matter.

Dated: April 30, 2021                                  Respectfully submitted,

**BERMAN TABACCO**

By:   */s/ Nicole Lavallee*
        Nicole Lavallee (admitted *pro hac vice*)

Joseph J. Tabacco, Jr. (JJT-1994)
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone:     (415) 433-3200
Facsimile:      (415) 433-6382
jtabacco@bermantabacco.com
nlavallee@bermantabacco.com

Patrick T. Egan (PE-6812)
One Liberty Square
Boston, Massachusetts 02109
Telephone:     (617) 542-8300
Facsimile:      (617) 542-1194
pegan@bermantabacco.com

***Class Counsel, Counsel for Lead Plaintiffs, the Wyoming State Treasurer and Wyoming Retirement System, and Counsel for Settlement Class Representative the Los Angeles County Employees Retirement Association***